# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-40711

S&D TRADING ACADEMY, LLC; S&D GLOBAL TRADING INC

Plaintiffs - Appellants

v.

AAFIS INC

Defendant - Appellee

Consolidated with
No. 08-40776

S&D TRADING ACADEMY, LLC; S&D GLOBAL TRADING INC

Plaintiffs - Appellees

v.

AAFIS INC

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:06-CV-739

Before REAVLEY, WIENER, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

S&D Trading Academy, LLC and S&D Global Trading, Inc. (collectively, "S&D") appeal the district court's grant of summary judgment in favor of AAFIS, Inc. on S&D's contractual and quasi-contractual claims. AAFIS cross-appeals regarding the award of costs. For the reasons that follow, we AFFIRM the district court's ruling with respect to each issue.

## I. BACKGROUND

In early 2005, AAFIS approached Donald J. Cleary about giving training on the day trading of stocks. AAFIS, a Los Angeles based investment company, is an active trader in the United States stock markets. It employs a company based in China called Asian American Association, Shen Yang, Limit Liability Company ("ASY"). ASY employs Chinese citizens to trade on AAFIS's account, but ASY's employees first need to be trained. Cleary was to train twenty-eight of ASY's Chinese traders. Cleary recruited Robert Compher to assist him with the training. Those two formed S&D Trading Academy, LLC and S&D Global Trading, Inc., through which they would provide their services to AAFIS.

S&D entered into an oral agreement with AAFIS to train the ASY employees. S&D would receive a base compensation of one dollar for every thousand shares traded during a six-month probationary period and for up to thirty-six months thereafter. Bonus compensation would be based on the profits generated by the traders. Training occurred both in Texas and China. While in Texas, S&D performed most of its training in an apartment furnished with tables and computers; the Chinese traders both worked and lived there. The training consisted of Cleary and Compher's monitoring the live, online trading

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

activities of the ASY employees while also trading on their own accounts.[1] Cleary and Compher further provided the employees with market research, stock recommendations, and trading strategies at the beginning of each trading day. And they set the "stop loss" for each trader, which was the maximum loss a trader could sustain before the trader was required to exit the market for the day. Cleary and Compher provided such training for a continuous period of approximately sixteen months. During the training, neither S&D nor Cleary nor Compher held any state or federal registrations or licenses.

The training began without a written agreement between S&D and AAFIS. The parties reached an impasse in their negotiations about a contract. AAFIS terminated its arrangement with S&D, Cleary, and Compher, effective October 2006. S&D had been paid periodically for its work, but it believed additional compensation was due. In November 2006, S&D filed suit against AAFIS, alleging breach of contract and misappropriation of trade secrets. S&D later amended its complaint, dropping the trade secrets claim and adding claims for quantum meruit, unjust enrichment, and money had and received.

In April 2008, AAFIS moved for summary judgment. It alleged that S&D's failure to register as an investment adviser or broker/dealer with the proper state and federal authorities precluded S&D from recovering under the oral agreement between the parties. S&D responded that it was not a broker/dealer and that it qualified under a "teacher" exception to the investment adviser registration requirements.

---

[1] AAFIS submits that during the trading hours, Cleary and Compher would have the traders who were not sitting at computers beside them tell them when the traders "got into a trade" so that Cleary and Compher could review the trade and give feedback regarding the transaction. The traders sitting beside Cleary and Compher on any given day received more intense instruction. AAFIS explains that Cleary and Compher would watch these traders more closely and would provide advice prior to the traders entering into a particular trade. These traders could also see the trades Cleary and Compher made.

The district court agreed with AAFIS and granted its motion for summary judgment solely because S&D had failed to register as an investment adviser as required by the Texas Securities Act. The court rejected S&D's contention that it fit into an exception to the statute's registration requirement for teachers. The court looked to a Securities and Exchange Commission no-action letter. That letter interpreted an almost identical exception to the investment adviser provision of the federal Investment Adviser Act. It concluded that the teacher exception "only covers actual teachers who work for accredited and certified institutions or schools of higher learning." S&D did not qualify.

The court entered a final judgment in favor of AAFIS in June 2008, awarding costs for defending the action. AAFIS submitted a bill of costs. The district court clerk originally taxed S&D with the full amount of costs requested. However, S&D filed an objection to the bill of costs, arguing that AAFIS should not recover the costs of obtaining six video depositions. Following a hearing on the issue, the district court disallowed the video deposition costs and awarded costs at a lower amount than originally requested.

Both parties timely appealed, S&D as to the court's summary judgment and AAFIS regarding the award of costs. Their appeals have been consolidated.

## II. DISCUSSION

A.     Investment Adviser Registration

We review a grant of summary judgment de novo, applying the same standard as the district court. Noble Energy, Inc. v. Bituminous Cas. Co., 529 F.3d 642, 645 (5th Cir. 2008). Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A district court's summary judgment may be affirmed on any ground that was raised below

and is supported by the record. Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 478 (5th Cir. 2008).

The Texas Securities Act, also known as a "Blue Sky Law," provides that "a person may not, directly or through an investment adviser representative, render services as an investment adviser in this state unless the person is registered under this Act . . . or is otherwise exempt under this Act." Tex. Rev. Civ. Stat. Ann. art. 581-12B. It further states that

> [n]o person who has made or engaged in the performance of any contract in violation of any provision of this Act or any rule or order or requirement hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract.

Id. at art. 581-33K. Thus, an unregistered individual or entity providing investment adviser services may not legally enforce a contract entered into regarding the provision of such services.

The Texas Securities Act defines "investment adviser" as follows:

> a person who, for compensation, engages in the business of advising another, either directly or through publications or writings, with respect to the value of securities or to the advisability of investing in, purchasing, or selling securities or a person who, for compensation and as part of a regular business, issues or adopts analyses or a report concerning securities . . . . The term does not include:
> . . .
> (2) a lawyer, accountant, engineer, teacher, or geologist whose performance of the services is solely incidental to the practice of the person's profession . . . .

Id. at art. 581-4N (emphasis added). It does not, however, include a definition of the term "teacher."

The Investment Adviser Act of 1940, a federal statute, similarly requires the registration of investment advisers and provides that "[e]very contract made in violation of any provision of this subchapter . . . , the performance of which

involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subhcapter, or any rule, regulation, or order thereunder, shall be void . . . ." 15 U.S.C. § 80b-15(b). Like the Texas Act, the Investment Adviser Act defines "investment adviser" as

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities; but does not include . . . (B) any lawyer, accountant, engineer, or teacher whose performance of such services is solely incidental to the practice of his profession . . . .

Id. § 80b-2(a)(11) (emphasis added). The federal Act, however, exempts from its registration requirement an "investment adviser that is regulated or required to be regulated as an investment adviser in the State in which it maintains its principal office and place of business, . . . unless the investment adviser . . . has assets under management of not less than $25,000,000 . . . ." Id. § 80b-3a(a)(1). "'[A]ssets under management' means the securities portfolios with respect to which an investment adviser provides continuous and regular supervisory or management services." Id. § 80b-3a(a)(2).

S&D maintains that the district court erred in concluding that it was required to register as an investment adviser under the Texas Securities Act. It contends that any investment advising services it provided under its agreement with AAFIS were solely incidental to its primary purpose of teaching AAFIS's employees how to day trade on the New York Stock Exchange, and it therefore qualified for the teacher exception to the investment adviser registration requirement.

Initially, S&D attacks the basis for the district court's decision. It notes that the sole authority that the court cited is an SEC no-action letter from 1977, which is not binding with respect to the proper interpretation of a Texas statute.

S&D submits that reversal is appropriate because the court relied exclusively on a federal, administrative-level opinion interpreting the federal rather than the Texas statute. S&D explains that even though the position of the administrative agency charged with enforcement of a statute is entitled to substantial weight, it is not conclusive. Furthermore, S&D points out that the court's reliance on federal authority deprives the Texas courts of the opportunity to develop their own definition of the teacher exception.

Rather than relying on the no-action letter, S&D maintains that the district court should have simply given the term "teacher" its common meaning. S&D submits that a Texas statute requires that terms not otherwise defined in a statute be given their ordinary meaning. Section 311.011 of the Texas Government Code provides: "(a) Words and phrases shall be read in context and construed according to the rules of grammar and common usage. (b) Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Moreover, cases applying Section 311.011 have stated that statutory terms "that are not otherwise defined are typically given their ordinary meaning." Guitar Holding Co., L.P. v. Hudspeth County Underground Water Conservation Dist. No.1, 263 S.W.3d 910, 915 (Tex. 2008).

Citing an online dictionary, S&D concludes that the common usage of the word "teacher" is to describe someone who teaches, and especially someone whose occupation is instructing. It argues that a teacher need not be a professor or lecturer at an accredited and certified institution of higher learning. S&D suggests that if the legislature had intended such a requirement, it would have used the word "professor" instead of the word "teacher."

Although there is no authority construing the Texas provision, there are a number of SEC no-action letters concerning the teacher exception to the federal investment adviser statute. S&D is correct that these are not controlling

authority regarding the meaning of the Texas exception. However, the Texas provision is nearly identical to its federal counterpart, which was promulgated nearly sixty years earlier.

Moreover, because there is very little authority interpreting the Texas provision itself, the "Texas courts generally look to decisions of the federal courts to interpret the Texas Securities Act because of the obvious similarities between the state and federal laws." Akin v. Q-L Invs., Inc., 959 F.2d 521, 532 (5th Cir. 1992) (citing Star Supply Co. v. Jones, 665 S.W.2d 194, 196 (Tex. App.—San Antonio 1984, no writ)). Indeed, the Texas Supreme Court has explained that the Texas legislature intended the Texas Securities Act "to be interpreted in harmony with federal securities law." Sterling Trust Co. v. Adderley, 168 S.W.3d 835, 840 (Tex. 2005). The Act itself states that it "may be construed and implemented to effectuate its general purpose to maximize coordination with federal and other states' law and administration, particularly with respect to . . . exemptions." Tex. Rev. Civ. Stat. Ann. art. 581-10-1A. Finally, though no-action letters are not binding on the courts or the SEC, federal courts may consider them persuasive authority regarding the proper interpretation of the federal provision. See Allaire Corp. v. Okumus, 433 F.3d 248, 254 (2d Cir. 2006).

Whatever our decision here, the Texas courts obviously retain their authority to define ths state statutory term differently. We proceed to define it based on what is available for our consideration.

In the SEC no-action letter relied on by the district court, an attorney sought to determine the regulations governing a client who wished "to teach individuals how to invest in the stock market and charge so much per lesson." Joseph P. Canouse Esquire, SEC No-Action Letter, 1977 WL 10657, at *1 (July 15, 1977). The client did not plan to issue newsletters or advisory letters, but merely intended to "instruct individuals on the various market timing devices—Dow Jones theory, etc." Id. In response to the inquiry, the Commission

8

explained the scope of the teacher exception to the investment adviser registration requirement as follows:

> Among the factors we have in the past considered in deciding whether an individual is eligible for this exclusion are whether his compensation for teaching is paid by an educational institution, whether the course which he is teaching is part of a program regularly offered by an educational institution, whether the school or institution is accredited, and the manner in which the course is offered to the public.

Id. The Commission concluded that based on the information contained in the attorney's letter, it appeared that his "client's proposed activities would place him within the definition of investment adviser" and that the teacher exception would not be available to him. Id.

In another no-action letter, an individual was planning to start a "stock market school" and requested guidance regarding whether he was required to register with the SEC. J. H. Rodgas, Jr., SEC No-Action Letter, 1974 WL 10941, at *1 (Sept. 7, 1974). The school was described as follows:

> [T]he course will be completely and purely instructional in concept and execution. Students will never be advised to buy or sell securities or to commit funds to any kind of investment. . . . We will teach them where to find and how to [e]valuate available information but emphasize that the final decision to buy or sell must be theirs alone. . . . In summary, our planned course of instruction is not an advisory service and no promises or predictions as to performance of any stock or group of stocks will ever be made to students. Instead, the students will be shown all of the various forces acting on the market, will be taught how to identify and evaluate those forces and will be shown how to make their own evaluations and their own market decisions.

Id. The Commission determined that the school would qualify as an investment adviser and therefore would be required to register before engaging in its proposed activities. Id. at *4. Furthermore, the teacher exception would not apply because the school did not "appear to have the attributes normally associated with an educational institution." Id. The Commission noted that

there was no indication that the school had been approved by an authorized state or federal agency or that it was an accredited educational institution. Id. Moreover, the inducement offered by the school to potential students was "the ability to use the course in a manner that will enable them to profit from investments in securities." Id.

The SEC again emphasized the narrow scope of the teacher exception in a no-action letter involving an assistant professor of finance at the Wharton School. He asked the SEC for a ruling regarding whether he was required to register as an investment adviser for conducting a series of investment strategy seminars for extra money. David A. Umstead, SEC No-Action Letter, 1976 WL 12176, at *1 (Aug. 13, 1976). The one-day seminars that he intended to teach included a discussion of the theoretical development of investment strategy and a general description of the different kinds of investment securities. Id. "In summary, the overall intent of the course [was] to build an analytical framework for making long run investment decisions and to make a general assessment of the current opportunities available in the securities markets." Id. It was not "a course of 'hot tips' with up to the minute assessments on individual securities." Id. The Commission concluded that teaching this course would constitute acting as an investment adviser and therefore required a registration. Id. at *2. Furthermore, the teacher exception would not apply for a number of reasons. Id. First, compensation for the seminars would be separate and in addition to the usual teaching salary. Id. Second, although participants in the seminar would receive certificates from the Wharton School, there was no indication that the course was a "part of the regular curriculum of study offered at that institution." Id.[2] Finally, the investment course was "being offered to the public

---

[2] See also Walter H. Shapiro, SEC No-Action Letter, 1978 WL 11703, at *2 (July 26, 1978) ("We have construed the term 'teacher' to mean a person who is a member of the teaching profession[,] and we have considered advisory services performed by a teacher to be

10

not primarily as an educational experience, but rather for the purpose of influencing investment decision making and assisting participants to maximize profits for their investments . . . ." Id.

The SEC no-action letters construing the federal provision are persuasive. We conclude that the teacher exception does not apply to the training provided by S&D. Neither Cleary nor Compher were professional teachers. They were not associated with an accredited school or course, and their training was not part of a program regularly offered by an educational institution. Moreover, their training was not academic in nature. They provided the traders with market research, stock recommendations, and trading strategies for a particular day or particular stock. The goal of the training was to influence the investment decision making of the Chinese traders and to enable them to maximize their profits. Applying the teacher exception under these circumstances would allow almost any investment adviser to qualify for the exception so long as they accompanied their advice with a justifying explanation. This result would undermine the general purpose of the Texas Securities Act, which is "to protect investors." Tex. Rev. Civ. Stat. Ann. art. 581-10-1B.

We are not convinced by S&D's argument that we should give the term "teacher" its plain and ordinary meaning. Although the Texas code contains a canon of interpretation suggesting that undefined words should be given their ordinary meaning, the definition S&D proposes is circular and imprecise. It makes a teacher anyone who teaches. Contrary to the cited canon, which states

---

solely incidental to the practice of a teacher's profession, and, thus, not to cause the teacher to come within the definition of investment adviser, when they are rendered in the course of instruction in a study which is given under the auspices of an academic institution."); Frank T. Hines, SEC No-Action Letter, 1972 WL 8250, at *1 (Aug. 21, 1972) (responding to a question regarding whether SEC registration would be required to conduct a college course in stock market strategy, the Commission explained, "we would be happy to consider a request for interpretation from an accredited institution which provides in detail a description of the course, and the background on the individuals who are conducting the course, including a brief description of their other academic responsibilities").

that words should be read in context, this proposed definition is divorced from the context of the Texas Securities Act and would contravene the overall purpose of the Act, as discussed above.

Because S&D does not qualify for the teacher exception and was not registered as an investment adviser as required under the Texas Securities Act, the district court properly granted summary judgment in favor of AAFIS on S&D's contractual and quasi-contractual claims. Because of this conclusion, we need not consider AAFIS's alternative arguments that summary judgment was proper for other reasons.

B.    Award of Costs

A "district court has broad discretion in taxing costs, and we will reverse only upon a clear showing of abuse of discretion." Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1049 (5th Cir. 1998). Moreover, within its wide discretion, a district court may order each party to bear its own costs. Hall v. State Farm Fire & Cas. Co., 937 F.2d 210, 216 (5th Cir. 1991).

AAFIS argues that the costs it incurred in obtaining copies of videotaped depositions should be taxed against S&D. It admits that at the time of the district court's ruling on costs, controlling Fifth Circuit law precluded the recovery of such costs. See Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 529-30 (5th Cir. 2001); Migis, 135 F.3d at 1049. Nevertheless, AAFIS maintains that the statute upon which our prior cases were based has been amended, and it contends that we should retroactively apply the amendment to allow for video deposition costs in this case.

Prior to its recent amendment, the United States Code section dealing with the taxation of litigation costs provided that a judge or court clerk may tax the following items as costs:

> (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and

witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2007). In light of Supreme Court precedent indicating that this provision should be strictly construed, "absent explicit statutory or contractual authorization to the contrary," we have consistently held that the costs associated with videotaped depositions may not be awarded. Mota, 261 F.3d at 529-30 (referencing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 444-45 (1987)). However, in October 2008, approximately three months after the costs award in this case, Congress passed the Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, 122 Stat. 4291, 4292. Section 1920(2) was amended to state that a judge may tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2) (current version). There was no effective date listed for this amendment.

The Supreme Court has set forth the following framework for determining whether a statutory amendment may be applied retroactively. See generally Landgraf v. USI Film Prods., 511 U.S. 244 (1994). "When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules." Id. at 280. If the statute contains no express command, then "the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. Also, if the statute would have retroactive

effect, then a presumption against retroactivity prevents the newly enacted statute from applying absent clear congressional intent otherwise. Id.

Regarding procedural rules, the Court further explained:

[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity. . . . Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.

Id. at 275. In a footnote, however, it explained that "the mere fact that a new rule is procedural does not mean that it applies to every pending case." Id. at 275 n.29. Instead, the applicability of new procedural rules may depend on the "posture of the particular case." Id.

AAFIS relies on one of the Supreme Court's pre-Landgraf decisions in asserting that we should apply the amended version of Section 1920(2) to award its video deposition costs in this case. See Bradley v. Sch. Bd. of Richmond, 416 U.S. 696 (1974). In Bradley, the Court held that a statute allowing for the award of attorney's fees, which was enacted after the case was submitted to the Court of Appeals but before its decision, should be applied to the case on appeal. Id. at 724. The Court anchored its holding "on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in a manifest injustice or there is a statutory direction or legislative history to the contrary." Id. at 711.

In Landgraf, the Court reaffirmed its decision in Bradley, specifically noting that Bradley did not resemble the cases in which it had invoked the presumption against statutory retroactivity: "Attorney's fee determinations, we have observed, are collateral to the main cause of action and uniquely separable from the cause of action to be proved at trial." Landgraf, 511 U.S. at 277 (internal quotation marks and citations omitted). AAFIS submits that taxable

14

costs are similar to attorney's fees, also collateral to the cause of action and "uniquely separable from the cause of action to be proved at trial." Thus, the presumption against retroactivity should not apply, and the amendments to Section 1920(2) should be applied to determine the costs taxable in this suit.

However, AAFIS's argument is foreclosed by a decision from this court applying Landgraf and concluding that a provision allowing for the payment of expert witness fees as a court cost should not apply retroactively to a case pending on appeal at the time of the provision's enactment. Shipes v. Trinity Indus., 31 F.3d 347, 347-48 (5th Cir. 1994). In Shipes, we considered whether a section of the 1991 Civil Rights Act providing for payment of expert witness fees as a part of costs should apply retroactively to a case in which both the relevant conduct and the trial court's ruling occurred before the effective date of the Act. Id. at 347. After noting that rules regarding attorney's fees are procedural and often subject to retroactive application, we cited Landgraf for the proposition that "when a procedural matter has been properly decided under the old rule, and a new procedural rule is subsequently enacted while the ultimate resolution of the case is still pending, no reversal is required." Id. at 349. We concluded that because the district court's decision denying expert witness fees was properly decided under the law applicable at the time, there was no reversible error. Id.

AAFIS submits that Shipes does not compel affirmance in this case because the taxability of video deposition costs was not settled at the time the district court entered its costs award. Although the case law in this circuit clearly held that the costs associated with video depositions were not taxable, AAFIS contends that this was a minority position not shared by five other circuits and numerous district courts. It suggests that given this split of authority, the amendment to Section 1920(2) was a clarification of the law, rather than a change in the law. Thus, we should apply the amended version of

Section 1920(2), not as the retroactive application of a new law, but as the application of the law in effect at the time of the award.

AAFIS offers as support for this position an opinion from this court stating that "changes in statutory language need not ipso facto constitute a change in meaning or effect. Indeed, a legislative body may amend statutory language to make what was intended all along even more unmistakably clear." NCNB Tex. Nat'l Bank v. Cowden, 895 F.2d 1488, 1500 (5th Cir. 1990) (internal quotation marks and citations omitted). In NCNB Texas National Bank, we further observed that "the existence of a dispute in the courts, such as a circuit split, may suggest that Congress was provoked to enact an amendment to clarify rather than change the law," especially when there is no indication in the legislative history that Congress intended to change the law or there is no dispositive legislative history at all. Id. at 1500-01. We were not, however, deciding whether statutory amendments should be applied retroactively. Rather, we were considering whether recent amendments provided additional support for our interpretation of the pre-amendment version of a statute. Id. at 1499-1501. As such, NCNB Texas National Bank is inapposite here.

We conclude that Shipes is controlling. At the time the district court ruled, the costs associated with videotaped depositions were clearly not taxable under the law of this circuit. Because the district court properly decided the costs issue under the law applicable at the time, our decision in Shipes proscribes retroactive application of the amendments to Section 1920(2) in the present case. Accordingly, the district court did not abuse its discretion in denying AAFIS the costs associated with the videotaped depositions.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment and AFFIRM its award of costs.