# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-2344

_____

Dimas Lopez, on behalf of themselves and all other similarly situated individuals;
Ibeth Lopez, on behalf of themselves and all other similarly situated individuals;
Santos Corona, on behalf of themselves and all other similarly situated
individuals; Abel Maravilla, on behalf of themselves and all other similarly
situated individuals; Maria De Jesus Ramirez, on behalf of themselves and all
other similarly situated individuals; Miguel Guico, on behalf of themselves and all
other similarly situated individuals; Dominga Mazariegos, on behalf of themselves
and all other similarly situated individuals; Jose Sales Ortiz, on behalf of
themselves and all other similarly situated individuals; Manuel Santana, on behalf
of themselves and all other similarly situated individuals; Carlos Godinez, on
behalf of themselves and all other similarly situated individuals; Mario
Mazariegos, on behalf of themselves and all other similarly situated individuals;
Carlos Medina, on behalf of themselves and all other similarly situated
individuals; Brenda Revolorio, on behalf of themselves and all other similarly
situated individuals; Guadalupe Macias, on behalf of themselves and all other
similarly situated individuals; Rafael Medina, on behalf of themselves and all
other similarly situated individuals; Norma Medina, on behalf of themselves and
all other similarly situated individuals; Guadalupe Herrera-Arias, on behalf of
themselves and all other similarly situated individuals; Esperanza Ceja Reyes, on
behalf of themselves and all other similarly situated individuals; Maria Magdelena
Sigoran, on behalf of themselves and all other similarly situated individuals;
Francisco Najarro Martinez, on behalf of themselves and all other similarly
situated individuals

*Plaintiffs - Appellants*

v.

Tyson Foods, Inc.

*Defendant - Appellee*

------------------------------

Secretary of Labor

*Amicus on Behalf of Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 16, 2012
Filed: September 4, 2012 (Corrected: 09/06/2012)

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Dimas Lopez and 19 other employees represent a class of hourly production employees at a meat-processing facility of Tyson Foods, Inc. The employees sued Tyson for not paying wages due under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq., and the Nebraska Wage Payment and Collection Act (NWPCA), Neb. Rev. Stat. § 48-1228 et seq. The jury returned a verdict for Tyson, finding the employees did not perform any compensable work for which they were not compensated. The employees appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

The employees are current and former hourly employees at Tyson's facility in Lexington, Nebraska. Tyson acquired the plant in 2001 when it purchased IBP, Inc., which operated many meat-processing facilities. The Lexington plant employs about 2400 production employees.

To calculate the employees' compensable working time, Tyson measures "gang time" – when the employees are at their working stations and the production line is moving. The employees claim Tyson failed to provide FLSA overtime compensation for donning (putting on) personal protective equipment (PPE) and clothing before production and again after lunch, and for doffing (taking off) PPE and clothing before lunch and again after production.[1] The PPE and clothing worn by individual employees vary depending on their role in the process. Tyson classifies items of PPE and clothing as either "unique" or "non-unique" to the meat-processing industry. Tyson stipulated it must pay employees for donning and doffing unique items, but contests paying for donning and doffing non-unique items. The employees also seek compensation for transporting the items from lockers to the production floor.

In addition to "gang time," Tyson adds "K-code" time to each employee's paycheck. Before 2007, Tyson paid four minutes of K-code time per day to each employee in order to compensate for the donning and doffing of unique items. From January 2007 to March 2010, Tyson added up to six minutes per day for pre- and post-shift walking time required of the employee. Since March 2010, Tyson has paid 20 to 25 minutes per day in order to compensate for all contested activities. Tyson does not record the actual time that employees perform any of these tasks.

The employees sued in federal court in June 2006, claiming violations of the FLSA and NWPCA. The state claim alleged Tyson violated the NWPCA by failing

---

[1]These activities have been the subject of previous cases with Tyson's predecessor IBP as defendant. *See, e.g.*, **Reich v. IBP, Inc.**, 820 F. Supp. 1315 (D. Kan. 1993), *aff'd and remanded*, 38 F.3d 1123 (10th Cir. 1994), *remanded to* Civil Action No. 88-2171, 1996 WL 445072 (D. Kan. Mar. 21, 1996), *aff'd sub nom.*, **Metzler v. IBP, Inc.**, 127 F.3d 959 (10th Cir. 1997); **Alvarez v. IBP, Inc.**, No. CT-98-5005-RHW, 2001 WL 34897841 (E.D. Wash. Sept. 14, 2001), *aff'd in part and rev'd in part*, 339 F.3d 894 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005), *remanded to* 2005 WL 3941313 (E.D. Wash. Dec. 20, 2005).

to pay what the FLSA required. Thus both claims turn on FLSA liability.[2] The district court[3] certified the FLSA claim as a collective action, *see* 29 U.S.C. § 216(b), and the NWPCA claim as a Rule 23 class action. Two hundred twenty-five employees opted in to the FLSA class, and the opt-out NWPCA class included over 10,000.

Tyson moved for partial summary judgment, which was denied. The employees moved for partial summary judgment, which was partially granted. After a nine-day trial, the jury returned a verdict for Tyson. The employees did not move – during or after trial – for judgment as a matter of law under Rule 50 or for a new trial under Rule 59. The Secretary of Labor filed an amicus brief in support of reversal and participated in oral argument.

## I.

The FLSA prohibits the employment of any person "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." **29 U.S.C. § 207(a)(1)**; ***IBP, Inc. v. Alvarez***, 546 U.S. 21, 25 (2005). An employee who sues for unpaid overtime "has the burden of proving that he performed work for which he was not properly compensated." ***Anderson v. Mt. Clemens Pottery Co.***, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds*, **Portal-to-Portal Act of 1947**, Pub. L. No. 80-49, 61 Stat. 84; ***Fast v. Applebee's Int'l, Inc.***, 638 F.3d 872, 881 (8th Cir. 2011). "Neither 'work' nor 'workweek' is defined in the statute." ***Alvarez***, 546 U.S. at 25. At one time, the Supreme Court defined work as "physical or mental exertion (whether burdensome

---

[2]Below and on appeal, Tyson challenges the NWPCA claim on other grounds that this court need not reach.

[3]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944), *superseded by statute on other grounds*, **Portal-to-Portal Act of 1947**, Pub. L. No. 80-49, 61 Stat. 84. The Court then "clarified that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA." *Alvarez*, 546 U.S. at 25, *citing **Armour & Co. v. Wantock***, 323 U.S. 126, 133 (1944).

Whether an employee's activity is "work" does not end the compensability analysis. In the Portal-to-Portal Act, Congress excluded some activities that might otherwise constitute work from the FLSA. The Act excepts two categories:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

**29 U.S.C. § 254(a)**; *Alvarez*, 546 U.S. at 26-28. "[A]ctivities performed either before or after the regular work shift, on or off the production line, are compensable . . . if those activities are *an integral and indispensable part of the principal activities* for which covered workmen are employed and are not specifically excluded by [29 U.S.C. § 254(a)(1)]." ***Steiner v. Mitchell***, 350 U.S. 247, 256 (1956) (emphasis added). And, "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under [29 U.S.C. § 254(a)]." *Alvarez*, 546 U.S. at 37.

The Department of Labor has a "continuous workday rule," generally defining an employee's "workday" as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." **29 C.F.R. § 790.6(b)**; *Alvarez*, 546 U.S. at 29, 37 (describing and applying the continuous workday rule). During the continuous workday, the compensability of all activities that otherwise satisfy the requirements of the FLSA is not affected by the Portal-to-Portal Act's exceptions. In *Alvarez*, the Supreme Court held that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [the Portal-to-Portal Act], and as a result is covered by the FLSA." *Alvarez*, 546 U.S. at 37.

## II.

The employees argue that the district court should have granted them judgment as a matter of law that the donning and doffing of non-unique items was: (1) compensable as part of the continuous workday, (2) "work" under the FLSA, and (3) "integral and indispensable" under the Portal-to-Portal Act. This court is unable to address these arguments because the employees did not preserve them for appeal.

The employees do not identify where in the record they raised the first issue in the district court. They therefore failed to preserve it for appeal. *See Wiser v. Wayne Farms*, 411 F.3d 923, 926 (8th Cir. 2005) ("[O]rdinarily this court will not consider arguments raised for the first time on appeal."), *quoting Wever v. Lincoln Cnty., Neb.*, 388 F.3d 601, 608 (8th Cir. 2004).

According to the employees, they preserved the other two issues by raising them in their motion for summary judgment. They acknowledge that the denial of a motion for summary judgment – an interlocutory judgment – is normally not appealable after a trial on the merits. *See Keup v. Hopkins*, 596 F.3d 899, 904 (8th Cir. 2010). They argue that a denial based on the interpretation of a purely legal

question is appealable.  In *Metropolitan Life Insurance Co. v. Golden Triangle*, 121 F.3d 351 (8th Cir. 1997), this court rejected a "dichotomy . . . between a summary judgment denied on factual grounds and one denied on legal grounds [as] both problematic and without merit."  **Id.** at 355.  Two years after *Metropolitan Life*, a panel of this court adopted the factual/legal dichotomy rejected in *Metropolitan Life* and held that "when the material facts are not in dispute and the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment."  **White Consol. Indus., Inc. v. McGill Mfg. Co.**, 165 F.3d 1185, 1190 (8th Cir. 1999); *see also* **Owatonna Clinic – Mayo Health Sys. v. Med. Protective Co. of Fort Wayne, Ind.**, 639 F.3d 806, 809-10 (8th Cir. 2011) (acknowledging the competing lines of cases, but not reaching the issue).  Recently, this court en banc held that "when faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'"  **Mader v. United States**, 654 F.3d 794, 800 (8th Cir. 2011) (en banc), *quoting* **T.L. ex rel. Ingram v. United States**, 443 F.3d 956, 960 (8th Cir. 2006).  Therefore, *Metropolitan Life*'s earlier holding is the law in this circuit.  A denial of summary judgment is not appealable after a final judgment regardless of whether the issue is factual or "purely legal."[4]

## III.

The employees challenge Jury Instructions 15, 17, 19, and 24.  To preserve alleged errors in the jury instructions, "a party must make a specific objection that distinctly states the matter objected to and the grounds for the objection."  **Bauer v. Curators of the Univ. of Mo.**, 680 F.3d 1043, 1044-45 (8th Cir. 2012) (internal quotation marks omitted), *paraphrasing* **Fed. R. Civ. P. 51(c)(1)**.  "An objection must be specific, precise enough to allow the district court to address any problems

---

[4]The employees also argue that they are appealing the district court's grant of summary judgment to them on the "work" issue.  The district court only granted partial summary judgment on the issue, and they appeal the partial denial. *See infra* **Part IV**.

and avoid a retrial. A general objection to a jury instruction, even when it encompasses a specific objection, is insufficient." *Id.* at 1045 (internal quotation marks and citation omitted). An issue is not preserved if a party "state[s] one ground when objecting to the instruction in the district court and then rel[ies] on a different ground on appeal." *Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir. 1998).

If preserved, this court reviews the district court's instructions to the jury for abuse of discretion. *Bauer*, 680 F.3d at 1044. "[This court's] review is limited to whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Linden v. CNH Am., LLC*, 673 F.3d 829, 836 (8th Cir. 2012). "Even if a district court erroneously instructs a jury, this court reverses only where the error affects the substantial rights of the parties." *Bauer*, 680 F.3d at 1044 (internal quotation marks omitted).

If not preserved, this court reviews the district court's instructions for plain error. *Id.* at 1045; **Fed. R. Civ. P. 51(d)(2)**. "Plain error is a stringently limited standard of review, especially in the civil context, and must result in a miscarriage of justice in order to compel reversal." *Schaub v. VonWald*, 638 F.3d 905, 925 (8th Cir. 2011). "Under the invited error doctrine, an erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned." *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 868 (8th Cir. 2011).

A.

The employees and the Secretary of Labor attack the district court's instruction to the jury – in Instructions 15 and 17 – that "[w]hen activities occur pre-shift or post-shift, only the time reasonably spent is compensable." They assert that this language contradicts the *Alvarez* Court's adoption of the continuous workday rule,

which – they believe – requires compensation for an employee's *actual* time spent performing any compensable activity.

The employees did not preserve this argument for appeal:

> [EMPLOYEES' COUNSEL]: The last sentence [of Instruction No. 15] says a reasonable amount of time. Judge Bataillon took that issue up in the first summary judgment order and spent, as I recall, I haven't read it in awhile, but as I recall, spent some amount of time saying why the actual amount of time, not the reasonable amount of time, is what's to be tried in this case.
>
> . . . .
>
> [TYSON'S COUNSEL]: Your Honor, may I respond to that?
>
> THE COURT: Yes.
>
> [TYSON'S COUNSEL]: That was an early motion for summary judgment where we sought to avoid all liability by holding up the *Reich* – or all liability for certain activities based on holding up the *Reich* injunction as a defense. All Judge Bataillon held is that we could not hold up the *Reich* injunction as a bar to the claims. He did not define the scope of the issues for trial. And we filed an entire brief on this pointing out that every court in the country has applied reasonableness as the test for claims and you can't just write that out of the case law.
>
> I mean, if *Reich* doesn't come into this case, then all the other case law still applies in this case. We've admitted the activities are compensable, but you can't write out the reasonable test.
>
> [EMPLOYEES' COUNSEL]: Well, Your Honor, I'm not sure if those cases are further than Maryland or not, but be that as it may. When you read the last paragraph of Judge Bataillon's order, he –
>
> THE COURT: I'll read it, yeah.
>
> [EMPLOYEES' COUNSEL]: That's the operative paragraph. And he says actual amount of time is the one to be tried.
>
> THE COURT: I'll take a look at it.
>
> [TYSON'S COUNSEL]: Your Honor – one last point on that, Your Honor, if I may?
>
> THE COURT: Yeah.

[TYSON'S COUNSEL]: He was only talking about the unique items on top of that. It can't possibly apply to the standard and sanitary items.

THE COURT: I'll take a look. Okay.

The discussion with the district court did not specifically raise the grounds now asserted on appeal. *See Bauer*, 680 F.3d at 1045 ("An objection must be specific, precise enough to allow the district court to address any problems and avoid a retrial."). At trial, the employees argued only that actual time is the issue in this case because of a prior ruling; they did not invoke the FLSA or case law to support removing the "reasonable time" language. At the close of the conference, the district judge promised to "take a look" at Judge Bataillon's order to determine whether the issue of actual versus reasonable time had been previously decided. That order denied Tyson's motion for summary judgment claiming that some of the employees' claims were barred by Tyson's compliance with an injunction requiring it to compensate employees for the *average* time to don and doff unique items. In rejecting average time, the order never mentions "reasonable time."

The employees' counsel did not raise any objection to the reference to "reasonable time" in Instruction 17. Nor did they object before or after the charge was read to the jury with the "reasonable time" language and the court invited any new objections.[5] The employees' limited objection to the "reasonable time" instruction did not allow the district court to address the problems with the instruction they now raise. *See Parkus*, 135 F.3d at 1234.

---

[5]The district court stated, "Any objections or exceptions noted by the parties to any of the instructions or the discussions we had are part of the record, do not need to be repeated here. They are available for you for future reference or for appeal if you so want." The employees' counsel chose to state only their objection to Instruction No. 24 (on K-Code time).

-10-

Because it was not preserved, this court reviews for plain error, which exists if:

> (1) the district court deviates from a legal rule; (2) the error is clear under current law; and, (3) the error affects substantial rights, which ordinarily means that the error affects the outcome of the proceedings. Plain error will not be corrected unless (4) it seriously affects the integrity, fairness, or public reputation of judicial proceedings.

*Bauer*, 680 F.3d at 1045 (internal quotation marks, citations, and alterations omitted). The employees do not meet their burden of showing reversible plain error because any error was not clear and did not affect substantial rights.

The employees fail to show an error that was clear under current law. Neither side identifies precedent from the Supreme Court or this court adopting or rejecting "actual" or "reasonable" time as the proper standard. The employees and the Secretary argue that the Supreme Court's adoption of the continuous workday in *Alvarez* logically mandates an actual time test. *See Alvarez*, 546 U.S. at 37. *But see Anderson*, 328 U.S. at 692 ("But under the conditions prevalent in respondent's plant, compensable working time was *limited to the minimum time necessarily spent* in walking at an ordinary rate along the most direct route from time clock to work bench." (emphasis added)). Although *Alvarez* is relevant to determining the standard, it does not clearly answer the question. Other circuits are divided. *Compare Alvarez v. IBP Inc.*, 339 F.3d 894, 914 (9th Cir. 2003) ("Charting a similar course, the district court attached 'the compensable time for each activity to the basis of a reasonable time, rather than the actual time required for each activity.' The use of reasonable time in this instance was within the district court's discretion." (alterations omitted)), *aff'd on other grounds*, 546 U.S. 21 (2005), *and Reich v. IBP, Inc.*, 38 F.3d 1123, 1127 (10th Cir. 1994) ("We believe reasonable time is an appropriate measure in this case."), *with Brock v. City of Cincinnati*, 236 F.3d 793, 803 (6th Cir. 2001) ("Courts should not inquire into the reasonableness of the amount of work employees actually

-11-

performed or determine what would have been a reasonable amount of work for an employer to seek and an employee to perform."), *and **Holzapfel v. Town of Newburgh, N.Y.**,* 145 F.3d 516, 528 (2d Cir. 1998) ("A 'reasonableness' standard is inappropriate in deciding how many overtime hours for which a K-9 officer should be compensated."). *See generally **Perez v. Mountaire Farms, Inc.**,* 650 F.3d 350, 372 (4th Cir. 2011) (rejecting defendant's theory "that compensable time . . . should have been calculated by adding together the minimum amounts of time expended by the best-performing employee in completing each activity" and endorsing "a calculation based on the summation of mean times"). Under current law, the district court's "reasonable time" instructions, if error, were not clear error.

The employees also cannot show that an error in the "reasonable time" instruction affected their substantial rights. The jury answered only one question: "Did the employees of Tyson Foods perform any compensable work for which they were not compensated?" (The jury said no.) This court has "no way of determining from this general verdict why the jury found [Tyson] not liable." *Regions Bank v. BMW N. Amer., Inc.*, 406 F.3d 978, 980 (8th Cir. 2005). The employees may be correct that the jury would have found Tyson liable if not instructed to consider only the "reasonable" time. However, it is also possible that the jury decided the activities were not compensable because they were not "work" under the FLSA or because they were not "integral and indispensable" under the Portal-to-Portal Act. Because of the verdict form, this court can only speculate as to the effect of the "reasonable time" instructions, and "[s]peculation . . . is not a sufficient basis for finding a plaintiff's substantial rights were affected." *Id.* at 981.

B.

The employees argue that the district court committed two errors in instructing whether donning and doffing the non-unique items was work under the FLSA. The district court instructed the jury:

-12-

The first issue you will have to decide is whether or not the activities at issue are "work." When deciding whether an activity is work, it makes no difference how easy or difficult the activity is, how long it takes, or whether it requires any exertion at all. The phrase "hours worked" includes all time spent by an employee that was primarily for the benefit of the employer or the employer's business. Such time constitutes "hours worked" if the employer knew or should have known that the work was being performed.

The plaintiffs claim that the time spent on Tyson's premises putting on and taking off work-related protective and sanitary equipment and gear, washing and sanitizing workers' equipment and themselves, sharpening knives, and the walking and waiting time that is required in performing these everyday duties, are "work" under the FLSA for which they should be paid. The plaintiffs must prove by a preponderance of the evidence that these activities are work.

To determine whether an activity is work, you may consider (1) whether the activity is required by the employer and (2) whether the benefit of the activity inures primarily to the employer. When activities occur pre-shift or post-shift, only the time reasonably spent is compensable.

You are instructed that time spent: (1) conducting pre- and post-shift donning and doffing of certain clothing and equipment that is unique to the meat-processing industry (these items include shin guards, mesh aprons, legging aprons, belly guards, steel/scabbard/knives, mesh gloves, Polar gloves, Polar sleeves, plexiglass arm guards, mesh sleeves, double mesh sleeves, and knocker vests), (2) post-shift walking from the production line associated with these unique items, (3) post-shift waiting at the wash stations and rinsing of these unique items, and (4) pre- and post-shift waiting to sanitize and sanitizing these unique items in dip tanks has already been determined to be compensable.

This determination should not effect [sic] your determination of the compensability of the other activities at issue in this lawsuit.

**Instruction No. 17**.

1.

The employees contend that the district court should not have submitted the "work" issue to the jury, because it is a question of law, not fact. However, their only objection at trial to the work instruction was that the court had "ruled in [their] favor on summary judgment, putting the work issue out of the case." That does not preserve review of the new grounds they raise on appeal. *See **Parkus***, 135 F.3d at 1234. This court is unable to review for plain error, because the employees invited any error by requesting an instruction that submitted the work question to the jury. *See **Matthew***, 639 F.3d at 868. On May 9, 2011, the employees requested an instruction entitled "FLSA – 'Work' Definition":

> Under the FLSA, the phrase "hours worked" includes all time spent by an employee that was primarily for the benefit of the employer or the employer's business and controlled by the employer. Plaintiffs claim that the time spent on Tyson's premises putting on and taking off work-related protective and sanitary equipment and gear, washing and sanitizing workers' equipment and themselves, sharpening knives, and the walking and waiting time that is required in performing these everyday duties, are "work" under the FLSA for which they should be paid. Plaintiffs must prove that it more [sic] likely true than not that these activities are work. *When deciding whether an activity is work*, it makes no difference how easy or difficult the activity is, how long it takes, or whether it requires any exertion at all. Work includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace. For example, even time an employee spends waiting may be work. In

-14-

deciding whether the activity is controlled by the employer you may consider whether the employer's operation or policies require that the employee use the gear when performing their work on the line. In deciding whether the activity is primarily for the benefit of the employer, you may consider whether the gear allows employees to perform the activity more efficiently, or whether laws or regulations required the particular activity.

**Plaintiffs' Proposed Jury Instruction No. 20** (emphasis added) (footnotes omitted). The employees cannot now assert that the district court erred by submitting the "work" issue to the jury when they requested it.

2.

The employees also challenge the last sentence of Instruction 17. It followed the explanation that the unique items were compensable and told the jury, "This determination should not effect [sic] your determination of the compensability of the other activities at issue in this lawsuit." According to the employees this instruction contradicts the continuous workday rule, which covers activities that fall between compensable activities. They did not raise this objection below, so this court reviews for plain error. *Bauer*, 680 F.3d at 1045.

Viewing the instructions as a whole, the district court did not err. In the instruction immediately following the allegedly erroneous language, the district court properly instructed the jury on the continuous workday rule.[6] Nothing in Instruction

_____

[6]The employees quibble with the district court's instruction on the continuous workday rule because it stated that "pre- and-post-shift activities that are *work* and that are integral and indispensable to the production work performed by employees are considered principal activities." **Instruction No. 18** (emphasis added). Any error in requiring some preliminary finding that an activity is work before it can be found to be integral and dispensable is harmless, because the two factors in the "work" test are among the three-factors in the integral-and-indispensable test.

-15-

17 contradicts that instruction. While not a model of clarity, it is not erroneous. *See* ***Ryther v. KARE 11***, 108 F.3d 832, 846 (8th Cir. 1997) (en banc).

C.

The employees contest the district court's instruction on whether a meal period is compensable. The employees objected to the instruction during the charging conference. This court reviews for an abuse of discretion. ***Bauer***, 680 F.3d at 1044-45. The district court instructed the jury:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period.
> The plaintiffs have the burden to prove that an employee is entitled to mealtime compensation. Whether an employee is entitled to mealtime compensation depends on whether the meal period as a whole was spent "predominantly for the benefit of the employer" or whether the employee was able to use the meal period effectively for his or her own purposes.

**Instruction No. 19.**

The employees contend the district court erred by refusing an instruction that used the Wage and Hour Division's standard in 29 C.F.R. § 785.19(a): "The employee must be completely relieved from duty for the purposes of eating regular meals." However, in *Henson v. Pulaski County Sheriff Department*, 6 F.3d 531 (8th Cir. 1993), this court rejected the completely-relieved-from-duty standard in favor of the predominantly-for-the-benefit-of-the-employer standard. ***Id.*** at 533-35 ("We conclude that the predominantly-for-the-benefit-of-the-employer standard provides the appropriate test for determining the compensability of meal periods under the

-16-

FLSA."); *see also **id.*** at 535 (noting that the Wage and Hour Division's regulations "do not bind us, as it is the courts that ultimately interpret the FLSA").

The employees try to distinguish *Henson* factually because it addressed employees seeking compensation for entire meal periods while on call, not employees seeking compensation for donning and doffing at the beginning and end of their meal period. However, the *Henson* court did not limit its holding to cases involving on-call employees: "Because this standard is flexible, it allows courts to consider different factors depending on the nature of the business involved, whether the dispute involves factory workers or firefighters." ***Id.*** at 534 (describing the standard as "a practical, realistic approach under the unique circumstances of each case [to use] when deciding whether certain activities constitute compensable work"). The employees also ask this court to abandon *Henson* in light of the Supreme Court's adoption of the continuous workday rule in *Alvarez*, 546 U.S. at 37. However, the adoption of that rule – limiting the impact of the Portal-to-Portal Act – does not affect the compensability of meal periods. The district court did not abuse its discretion in instructing the jury on the compensability of meal periods.

D.

The employees argue that the district court erred by instructing the jury to ignore the K-code changes in determining Tyson's liability. The court instructed:

> You have heard testimony regarding changes made by Tyson Foods to the workday at the Lexington facility, as well as testimony about changes to the K code during the period at issue in this lawsuit. You should not consider the fact that Tyson Foods changed its workday or changed the number of K code minutes paid in determining whether Tyson Foods is liable for the activities at issue in this case.

-17-

**Instruction No. 24**. Tyson requested the instruction before trial, but the district court did not include it in its proposed instructions. During the charging conference, Tyson again requested the instruction, citing Federal Rule of Evidence 407. The employees objected on the grounds that no objection was made during the trial and it was too late for a limiting instruction. At the conference, the district court expressed doubt about including the instruction, but eventually did. Before the charge was read to the jury, the employees renewed their objection without offering new grounds.

On appeal, the employees argue that: (1) the limiting instruction entered the case too late and without a previous objection; (2) Rule 407 does not apply in an FLSA case for overtime, a strict liability claim; and (3) the evidence should have been admitted for several purposes other than to prove liability. This court reviews their first argument – properly raised in the district court – for abuse of discretion, and the others for plain error. *See Bauer*, 680 F.3d at 1044-45; *Parkus*, 135 F.3d at 1234.

First, the district court did not abuse its discretion by giving the limiting instruction after the close of evidence and without objection. Under Federal Rule of Evidence 105, "[i]f the court admits evidence that is admissible against a party or for a purpose – but not against another party or for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." "A request for a limiting instruction should be specific and timely." *United States v. Thirion*, 813 F.2d 146, 155 (8th Cir. 1987). Tyson requested the limiting instruction in its proposed jury instructions before trial and again at the charging conference. The employees believe the request should have been made when the evidence was admitted. However, there is no strict rule on the timing of a request, and timeliness is measured against specificity. *See id.* at 156. The more specific the request, the further in time it may be from the introduction of the evidence. *Id.* Tyson's requests specifically identified the testimony and were made before and after it was admitted. The district court did not abuse its discretion in giving the limiting instruction under Rule 105.

-18-

Second, the district court did not commit plain error by allowing the limitation under Federal Rule of Evidence 407. Plain error exists if:

(1) the district court deviates from a legal rule; (2) the error is clear under current law; and, (3) the error affects substantial rights, which ordinarily means that the error affects the outcome of the proceedings. Plain error will not be corrected unless (4) it seriously affects the integrity, fairness, or public reputation of judicial proceedings.

*Bauer*, 680 F.3d at 1045 (internal quotation marks, citations, and alterations omitted). The employees fail to show that any error was clear under current law. Rule 407 states: "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction."

The employees argue that Rule 407 does not apply because their FLSA claim is a strict liability claim. Prior to its amendment in 1997, Rule 407 applied only to "negligence or culpable conduct." *See* **Fed. R. Evid. 407 advisory comm. notes**. It was then "the law of this Circuit . . . that Rule 407 d[id] not require the exclusion of subsequent remedial measures in strict liability cases." *Porchia v. Design Equip. Co.*, 113 F.3d 877, 880 (8th Cir. 1997). This court's cases applying that rule involved products liability. *See, e.g.*, *Porchia*, 113 F.3d 877; *Buchanna v. Diehl Mach., Inc.*, 98 F.3d 366 (8th Cir.1996); *Burke v. Deere & Co.*, 6 F.3d 497 (8th Cir. 1993). The first case in this line, *Robbins v. Farmers Union Grain Terminal Ass'n*, 552 F.2d 788, 793 (8th Cir. 1977), relied on the California Supreme Court's opinion in *Ault v. International Harvester Co.*, 528 P.2d 1148, 1151 (Cal. 1974). *Ault*, in turn, based its holding on the fact that the exclusionary rule embodied in Rule 407 "may fulfill [its] anti-deterrent function in the typical negligence action, [but] the provision plays no comparable role *in the products liability field*." *Id.* at 1151 (emphasis added). The 1997 amendment "adopts the view of a majority of the circuits that have interpreted

-19-

Rule 407 to apply to products liability actions." **Fed. R. Evid. 407 advisory comm. notes**. It is unclear whether this court's "strict liability" exception to Rule 407 survived the 1997 amendment. *See Porchia*, 113 F.3d at 880 n.3 ("In stating this rule . . . we reiterate concerns stressed by this Court in *Burke*, regarding the dangers inherent in an approach that varies the admissibility of subsequent remedial measures depending on whether an action lies in strict liability or negligence."). Because it is unclear, any error in applying Rule 407 here is not plain error.

Finally, the district court did not commit plain error by improperly excluding evidence under Rule 407 when it should have been admitted for other purposes. *See* **Fed. R. Evid. 407** ("[T]he court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures."). The employees argue that the evidence was probative of several other purposes, including impeaching Tyson's testimony that the activities took a shorter period of time, calculating backpay due to the class, proving any unpaid overtime was not de minimis, and establishing the feasibility of precautionary measures. However, the court did not err because the instruction only restricted consideration of the K-code change for the ultimate question of liability. It left open its use for the other purposes identified by the employees.

IV.

The employees argue that the district court's instruction submitting the "work" issue to the jury was inconsistent with the summary judgment order of April 6, 2011. They contend the district court violated due process by effectively – without notice or a hearing – amending its pre-trial ruling after the close of evidence. This court need not determine whether such an amendment would violate due process because the court's instruction is consistent with its earlier ruling.

-20-

Tyson's answer to the complaint listed several affirmative defenses, including: "All or part of the time for which plaintiffs or any proposed class members seek compensation does not constitute compensable working time." The employees moved for partial summary judgment, arguing that this affirmative defense should not be available. Specifically, they forecast that Tyson's defense would rely on *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994), which held that donning and doffing non-unique sanitary and safety equipment was not compensable "work" under the *Tennessee Coal* definition because it did not involve "physical or mental exertion." *Id.* at 1125-26, *citing* **Tennessee Coal**, 321 U.S. at 598. The employees urged the district court to preclude this argument because the Supreme Court stated in *Alvarez* that "'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA." *Alvarez*, 546 U.S. at 25. The district court agreed and granted summary judgment to the employees in part, explaining that "[Tyson] will be denied the ability to bring an affirmative defense alleging that the donning and doffing of standard (non-unique) clothing or gear is noncompensable because it is not 'work' pursuant to the *Reich* and *Tennessee Coal* analysis."

The district court's ruling, however, did not remove the issue of work entirely from the case. There remained the issue whether donning and doffing non-unique items is work under the Supreme Court's current definition. Tyson was precluded from relying on the rejected portion of the *Tennessee Coal* definition as a defense. The employees at all times bore the burden of proving they performed uncompensated work. *Anderson*, 328 U.S. at 686-87.

The employees' due process argument – that the submission of the work issue "blindsided" them – is further undercut by their own instruction on "work," submitted over one month after the summary judgment order. Their Proposed Jury Instruction No. 20 mirrors the district court's ruling that work was still at issue, with the burden on them. The employees objected to Tyson's requested work instruction as "contrary

-21-

to the Court's previous rulings on the Motions for Summary Judgment" and recommended their requested instruction be used instead.  They cannot now claim a similar instruction blindsided them.

* * * * * * *

The judgment of the district court is affirmed.

_____