BEAM, Circuit Judge,
dissenting.
For two independent but somewhat factually related reasons, this case should be reversed, remanded and dismissed. First, under the circumstances of this litigation, neither the putative Fair Labor Standards Act (FLSA) collective action (the so-called federal class) nor the purported Iowa Wage Payment Collection Law (IWPCL) Rule 23(b)(3) class (the so-called state class) were eligible for class certification, either as a matter of fact or a matter of law. Wal-Mart Stores, Inc. v. Dukes, — U.S. —, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011); O’Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 583-84 (6th Cir.2009); Thiessen v. General Elec. Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir.2001). Second, Rule 23 state-law-based class actions are fundamentally different than collective actions authorized under the FLSA and may not be procedurally homogenized for trial as done in this case.[7] Genesis Healthcare Corp. v. Symczyk, — U.S. —, 133 S.Ct. 1523, 1529, 185 L.Ed.2d 636 (2013).
I. BACKGROUND
This litigation generally involves hourly production employees of Tyson Foods at its Storm Lake, Iowa, meat-processing facility. But, the dispute more basically involves six named (lead) plaintiff employees from the kill, cut and retrim departments of the Storm Lake operation who were paid their wages using, in part, Tyson’s *801 “gang-time” compensation system but who also claim to have been owed overtime pay resulting from disparate compensable work activities occurring at times other than while earning daily “gang time” kill, cut and retrim department production line compensation. The six attempt to assert two separate collective actions-a federal statutory action asserting violations of the FLSA, 29 U.S.C. §§ 201-219, and a state statutory action separately based upon the IWPCL, Iowa Code Chapter 91A.
This ease was originally assigned to the Honorable Mark Bennett who conditionally “certified” a federal collective action class pursuant to 29 U.S.C. § 216(b) and a purported IWPCL state law class pursuant to Federal Rule of Civil Procedure 23(b)(3). Then, because the Honorable John Jarvey was already assigned to several comparable cases involving Tyson, including a case involving Tyson employees at Columbus Junction, Iowa, Guyton v. Tyson, No. 3:07-cv-00088-JAJTJS (S.D.Iowa) (a companion case on appeal), this matter was transferred to Judge Jar-vey for further pretrial and post-trial proceedings and for trial. The case has now been litigated and is before this panel on appeal.
II. DISCUSSION
1. The Classes
A. The Federal FLSA Class
A collective action to recover damages permitted by the FLSA “may be maintained against any employer ... in any Federal or State court of competent jurisdiction by anyone or more employees for and in behalf of himself or themselves and other employees similarly situated.” 29 U.S.C. § 216(b). However, “[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.” Id.
The six named lead plaintiff employees who sought to establish this collective action bore the “burden of showing that the opt-in [consenting] plaintiffs are similarly situated to the lead plaintiffs.” O’Brien, 575 F.3d at 584. Judge Bennett, apparently recognizing the likely existence of numerous factors unrelated to the “gang-time” pay used to determine a given Tyson employee’s regular wages — factors amply established by the evidence at trial — certified a “conditional” FLSA class consisting of employees from the kill, cut and retrim departments at the Tyson plant paid through the so-called gang-time compensation system within a discrete time period set forth in the certification. Indeed, the conditional certification related only to the three departments and the gang-time pay earned in the production line in those departments. No other regular or overtime pay calculation factors discussed at the merits portion of the trial (such as: individual employment codes, specific duties, wage-rate variations, knife wielding protections, sanitary clothing and equipment, part-time work, illness, injury, shift differentials, and routine production line overtime) were in any way incorporated as limitations on the use of the FLSA conditional class. The record reveals that this “conditional” designation was never withdrawn or modified at any time during or after the trial. According to the joint stipulation of facts by the parties, there were 444 employees who consented to be a part of this FLSA collective action class including the six named lead plaintiffs.
B. The IWPCL State Class
“ ‘In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met.’ ” Luik *802 en v. Domino’s Pizza, LLC, 705 F.3d 370, 372 (8th Cir.2013) (quoting Coleman v. Watt, 40 F.3d 255, 258 (8th Cir.1994)). Judge Bennett, at the request of the same six named plaintiffs who sought creation of and joined the FLSA collective class, ultimately certified what he termed a “modified” 3,344-person putative Rule 23 state law class consisting of all “current and former employees of Tyson’s Storm Lake, Iowa, processing facility who have been employed at any time from February 7, 2005, to the present, and who are or were paid under a ‘gang-time’ compensation system in the Kill, Cut or Retrim departments.” This certification also included no other limiting or enhancing overtime pay calculation elements. The record discloses that this certification was likewise never further embellished or modified during or after trial.
The “gang-time system of payment” as referred to by Judge Bennett and defined by the evidence is a system where employees are paid from the time their production line starts to the time their production line ends. There is no contention by the named plaintiffs that the Storm Lake Tyson employees did not receive all wages due and owing for time worked during the production line gang-time pay periods. So, standing by itself, as it does in the class certifications, the gang-time production line classification means little in the context of proving at trial through evidence common to the class the overtime pay claims of the 3,344 members of the allegedly underpaid overtime class. Supreme Court and Eighth Circuit precedent demands otherwise. See Dukes, 131 S.Ct. at 2549-50 (discussing the requirements of class certification); see also Lopez v. Tyson Foods, Inc., 690 F.3d 869, 874 (8th Cir.2012) (an employee who sues for unpaid overtime has the burden of proving he performed work for which he was not properly compensated).
To be certified for purposes of Rule 23(a), the collective groupings, that is the putative classes, must have been such that Tyson was positioned to assert its legitimately held common-to-the-class defenses against all members of the group who claimed to have earned unpaid overtime wages. See Fed.R.Civ.P. 23(a)(3). In this same context, the class must have been limited to Tyson employees who could and did establish entitlement to overtime pay resulting from overtime work performed during compensable time, that is, work performed at times other than production line gang-time pay periods-periods for which all class members were already routinely, regularly, and unquestionably paid by Tyson in accordance with the law.
“In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met.” Luiken, 70S F.3d at 372 (quotation omitted). While a Rule 23(b)(3) class was purportedly certified, any Rule 23 class may only be lawfully certified if the “trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.” Dukes, 131 S.Ct. at 2551 (quotation omitted). Actual, not presumed, conformance with Rule 23(a) remains indispensable. Id. Frequently, as in this case, “ ‘rigorous analysis’ will entail some overlap with the merits of the plaintiffs underlying claim.” Id. Rule 23(a)’s four bedrock requirements are numerosity, commonality, typicality and adequate representation (here, a named plaintiff with standing). Commonality requires the plaintiff to demonstrate at the time- of the merits hearing on the underlying claim — that all class members suffered the same injury. Dukes, 131 S.Ct. at 2551. So, if the locution “injury” includes the measure of a class member’s individual damages, as I *803 believe it does, this class fails on that score alone.
The court majority apparently sees a pathway around plaintiffs’ legal dilemma arising from the above-noted class formulation failures. Although acknowledging that class certification is improper when a “windfall” is conferred on some class members, ante at 797, the court makes the following observation:
At any rate, at Tyson’s request, the jury was instructed, “Any employee who has already received full compensation for all activities you may find to be compen-sable is not entitled to recover any damages.” Tyson’s instruction directed the jury to treat plaintiffs with no damages as class members. It is “fundamental that where the defendant ... ‘invited error’ there can be no reversible error.” United States v. Beason, 220 F.3d 964, 968 (8th Cir.2000) (quoting United States v. Steele, 610 F.2d 504, 505 (8th Cir.1979)).
Ante at 798.
Thus, says the court, Tyson “directed the jury to treat plaintiffs with no damages as class members.” However, Tyson made no such class membership directive to the jury through its instructional request and Beason and Steele are wholly inapposite as case precedent for the court’s faulty premise. The cases deal only with run-of-the-mill evidentiary matters, not waivers of legal principles. Beason simply opened the door to the making of a Bruton exception by permitting an admission from a non-testifying co-defendant, and Steele admitted otherwise inadmissible hearsay evidence to clarify and rebut an issue opened by the criminal defendant’s cross-examination. Tyson, after vigorously resisting class action formulations at every turn in this litigation, and being denied, properly requested an instruction that the plaintiffs be held to their evidentiary burdens of proof.
C. The Merits
Fundamentally, as previously noted, this case emerges from two separate causes of action brought through a single federal court complaint — a federal law cause of action alleging liability leading to damages arising from violation of the FLSA and a state law cause of action alleging liability and damages arising from violation of the IWPCL. The burden of proof on all issues of statutory liability, injury and measure of damages rests squarely upon the shoulders of the named plaintiffs. Lopez, 690 F.3d at 874. In this case, gang-time pay is not in dispute. The plaintiffs contend, as does the court majority, that the overtime pay dispute involves time spent by a class of Tyson employees in doffing and donning various sanitary and personal protection equipment before and after the gang-time production line work has been completed each day.
Tyson’s Storm Lake employees are required to wear a different combination of sanitary and protective gear. Those employees wearing knives to use in conjunction with their particular duties on a particular day are required to wear a combination of a plastic belly guard, mesh apron, mesh sleeve, plexiglass arm guard, mesh glove, Polar glove, membrane skinner gloves, Polar sleeves, “steel” for maintaining the knives and knife scabbards (“knife related gear”). Other workers are required to wear a hard hat, hairnet, beard net, earplugs, ear muffs, rubber or cotton gloves, and rubber or plastic aprons (“sanitary gear”).
From 1998 until February 4, 2007, Tyson paid four extra minutes beyond production line time for all production employees, referred to as “K-Code” time. From *804 February 4, 2007, to June 28, 2010, Tyson ceased paying non-knife-wielding employees for the time donning and doffing sanitary gear. From February 4, 2007, to June 28, 2010, Tyson paid knife-wielding employees between 4 to 8 minutes of K-Code time, depending on the job, and employees who did not have a knife did not receive K-Code time payments.
Plaintiffs offered evidence at trial concerning a sample of putative class employees from Dr. Kenneth Mericle and Dr. Liesl Fox. Fox’s calculation testimony fed off of Mericle’s evidence concerning Rule 23 class damages for overtime pay. Fox testified, assuming Mericle’s evidence was true, that at least 212 members of the purported class did not suffer any damages because the doffing and donning time, less the K-Code time “would not have been enough to kick them into overtime.” Further, while the plaintiffs’ evidence generally indicated some individual overtime damages ranging from a few cents to several thousand dollars, there were at least 509 workers whose injuries ranged from $0.27 to less than $100. And, the record discloses that the jury in returning only a single gross amount of damages verdict, as instructed, discounted plaintiffs’ evidence by more than half, likely indicating that more than half of the putative class suffered either no damages or only a de min-imis injury measured in cents rather than dollars. In spite of having the burden of proof, there was no evidence adduced by plaintiffs that established the number of purported class member employees fully compensated or not fully compensated by the K-Code payments already paid by Tyson. It is evident, however, that many class employees fit within each category and all were apparently included as beneficiaries of the single damages verdict returned by the jury.
Rule 23(a)(2) contemplates that “there are questions of law or fact common to the class.” “Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law.” Dukes, 131 S.Ct. at 2551 (quotation and citation omitted). Rather, “[tjheir claims must depend upon a common contention.That common contention, moreover, must be of such a nature that it is capable of class-wide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Id. “What matters to class certification ... is not the raising of common ‘questions’ ... but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.” Id. (first alteration and italics in original) (quotation omitted). That was not the case here. While it is true that all class members were subject to a common policy-gang-time payment— there is no “common answer,” arising from the evidence concerning the individual overtime pay questions at issue in this case. Thus, this case with these classes cannot be resolved in “one stroke,” given the differences in donning and doffing times, K-Code payments, abbreviated gang time shifts, absenteeism, sickness, vacation and a myriad of other relevant factors. The “rigorous” analysis of class certification in this case, which overlaps with the merits as required by Dukes, 131 S.Ct. at 2551, clearly discloses that the Rule 23 class claim does not comply with either rule or precedent and should have been decertified.
Finally, the wisdom of the Supreme Court’s statement in Symczyk, 133 S.Ct. at 1530, that Rule 23 class actions and collective actions under the FLSA are fundamentally different and thus do not lend *805 themselves to inextricably intertwined trials, as here, is well dramatized by this case.[8] Here we have undifferentiated presentations of evidence, including significant numbers of the putative classes suffering no injury and members of the entire classes suffering wide variations in damages, ultimately resulting in a single-sum class-wide verdict from which each purported class member, damaged or not, will receive a pro-rata portion of the jury’s one-figure verdict. Assuming that the district court could now re-open the proceedings in an effort to deal with an individual plaintiffs damages using the Mericle/Fox evidence, the exercise would be laborious, virtually unguided, and well outside of the limiting parameters the Supreme Court has, as a matter of law, placed upon use of the Rule 23 class action machinery.
III. CONCLUSION
From this result, I dissent.

. In its footnote 2, the court takes issue with this observation. In support, the court cites Salazar v. Agriprocessors, Inc., 527 F.Supp.2d 873 (N.D.Iowa 2007), and Lindsay v. Government Employees Insurance Co., 448 F.3d 416 (D.C.Cir.2006). Although subject matter jurisdiction was not in dispute in this case, Salazar and Lindsay deal with whether a federal cause of action (the FLSA) and a state cause of action (the IWPCL) "derive” sufficiently from the same "common nucleus of operative facts” that, when joined, they form part of a case and controversy under Article III of the United States Constitution. Lindsay, 448 F.3d at 424 (quotation omitted), Salazar, 527 F.Supp.2d at 880 (quotation omitted); See 28 U.S.C. § 1367(a). But, “case and controversy” standing is not the fundamental issue here. The question is whether the separate federal and state claims were sufficiently identical to be presented to the jury, as here, as one amalgamated cause of action. In my view, Supreme Court precedent indicates they were not.

. In footnotes 3 and 4, the court again takes issue with this contention. Interestingly, in doing so, the court cites Symczyk, a case that clearly holds to the contrary. In Symczyk, the Supreme Court, in discussing an FLSA mootness issue and the applicability, or not, of Rule 23 class action cases to that particular question, stated: "Rule 23 actions are fundamentally different from collective actions under the FLSA.” 133 S.Ct. at 1529. And then more to the point here, the Supreme Court held that although a putative class acquires "independent legal status once it is certified under Rule 23[, u]nder the FLSA, by contrast, ‘conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved notification to employees.” Id. at 1530. Thus, the FLSA class in this case never progressed beyond "conditional” status and could not, as a matter of law, have been joined with the supposed Rule 23 class in an actionable claim of any kind, however the parties may have chosen to treat this conditional effort, which treatment is unclear from the record.