UNITED STATES v. FALKENHAINER.[1]

*(Circuit Court, E. D. Missouri.  September 16, 1884.)*

1. STEALING LETTERS FROM POSTAL CAR—SECTION 5469, REV. ST., CONSTRUED.
    It is an offense punishable by imprisonment, under section 5469 of the Revised Statutes, for a person in the postal service to steal a letter from a postal car.

2. SAME—NOT A FELONY.
    Stealing a letter from a postal car is not a felony.

3. SAME—INDICTMENT.
    Where the offense charged is stealing a letter containing a treasury note, it is not necessary for the indictment to allege the ownership of the note.

4. SAME—EVIDENCE.
    Where a postal clerk was charged with stealing letters from a postal car, and there was testimony tending to show that the letters stolen were taken from a straight package, which he had no right to disturb, *held,* that evidence was admissible to show what the contents of the package was when it was received, and that the letters it contained, which were not stolen, were admissible in evidence for that purpose.

Error to the District Court for the Eastern District of Missouri.

Indictment against a postal clerk for stealing letters from a postal car.  The defendant was found guilty in the district court of stealing a number of letters from a postal car as charged, part of which contained and are stated in the indictment to have contained two one-dollar United States treasury notes each.  The indictment gives the names of the parties to whom the letters were addressed, but does not allege the ownership either of the letters or their contents.

*William H. Bliss,* for the United States.

*Thos. C. Fletcher* and *Geo. H. Shields,* for defendant.

BREWER, J.  The defendant was convicted in the district court, under section 5469 of the Revised Statutes, of stealing and taking from a postal car certain letters, and sentenced to hard labor for a term of two years.  A bill of exceptions was signed, a writ of error allowed, and the case is now in this court for review.  Several questions have been ably and elaborately argued by counsel.  I shall notice the most important.

1. It is insisted that the section prescribed no punishment for the offense charged, and the case of *U. S.* v. *Long,* 10 FED. REP. 879, decided by Circuit Judge PARDEE, is cited as authority.  With the highest respect for that distinguished judge, I cannot concur in his

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

conclusions. The specific objection is this: The section contains several clauses, each defining an offense against the postal service, separated from each other by a semicolon, and connected by no conjunction, copulative or disjunctive, and the last clause alone containing any express denunciation of penalty. So that the section reads thus: "Any person who shall steal the mail," etc.; "any person who shall take the mail," etc. Then, after several clauses separated in the same manner, the following: "Any person who shall, by fraud or deception, obtain," etc., "shall, although not employed in the postal service, be punishable," etc. There is in this last clause no word or expression which, in terms, refers to or includes the prior clauses, and the contention is that the penalty is denounced only on him who is guilty of the offense described in this last clause. When tried by the strict letter there is force in the objection; but it is as old as the Scripture that while "the letter killeth, the spirit maketh alive," and no better illustration can be found than the present; for if we keep to the mere narrowness of the letter, the first clauses, embracing five-sixths of the section, are not only without force to sustain the present indictment, but are absolutely dead and meaningless. They signify nothing, and congress, instead of defining these various offenses, might as well have filled up the section with a recitation of the Greek alphabet. I do not think that the courts are at liberty to set at naught the obvious intent of congress, and thus destroy the main body of this section. Courts will often look beyond the letter to the intent, upholding the latter even at the expense of the former. Indeed, the cardinal canon of construction is that the intent when ascertained governs, and to that all mere rules of interpretation are subordinate. *State* v. *Bancroft*, 22 Kan. 206. "A thing which is within the intention of the makers of a statute, is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers; and such construction ought to be put upon it as does not suffer it to be eluded." *Holmes* v. *Carley*, 31 N. Y. 290; Bac. Abr. St. 1, §§ 5, 10, and authorities cited. Plowden thus quaintly expresses the same thought in his commentary upon the case of *Eyston* v. *Studd*, 2 Plowd. 465:

"It is not the words of the law, but the internal sense of it, that makes the law; and our law, like all others, consists of two parts, viz., of body and soul. The letter of the law is the body of the law, and the sense and reason of the law are the soul of the law,—*quia ratio legis est anima legis*,—and the law may be resembled to a nut, which has a shell and a kernel within; the letter of the law represents the shell, and the sense of it the kernel; and as you will be no better for the nut if you make use only of the shell, so you will receive no benefit from the law if you rely upon the letter, and as the fruit and profit of the nut lie in the kernel and not in the shell, so the fruit and profit of the law consist in the sense more than in the letter. And it often happens that when you know the letter you know not the sense, for sometimes the sense is more confined and contracted than the letter, and sometimes it is more large and extensive."

Doubtless the letter is first to be considered in order to determine the intent of the legislature, for the courts may not read a law simply as they wish it should read. But other matters may also be considered, and among them the evils sought to be remedied. It was resolved by the barons of the exchequer in *Heydon's Case*, 3 Rep. 7, as follows:

"For the sure and true interpretation of all statutes in general, be they penal or beneficial, restrictive or enlarging of the common law, four things are to be discerned and considered: *First*. What was the common law before the making of the act? *Second*. What was the mischief and defect against which the common law did not provide? *Third*. What remedy the parliament hath resolved and appointed to cure the disease of the commonwealth. And, *fourth*, the true reason of the remedy."

In *Powlter's Case*, Lord COKE observes:

"It is frequent in our books that penal statutes have been taken by intendment, to the end that they should not be illusory, but should take effect according to the intention of the makers of the act." 11 Coke, 34.

Bishop, in his work on Statutory Crimes, says, in section 243:

"When the legislative meaning is plain, the exact grammatical construction and propriety of language may be disregarded, even in a penal statute. Courts interpret the word 'and' as disjunctive, and the word 'or' as conjunctive, when the sense absolutely requires it; and this, in extreme cases, in criminal statutes against the accused." Section 212: "A strict construction is not violated by giving the words of the statute a reasonable meaning according to the sense in which they were intended, and disregarding captious objections and even the demands of an exact grammatical propriety." Section 81: "A statute will not be controlled by grammatical construction in such a way as to defeat its obvious meaning; * * * for example, conjunctive sentences describing different branches of the same offense will be construed as conjunctive or disjunctive, according as the sense and evident intention of the legislature may require; and words and expressions inaccurately used will receive the meaning intended, where it appears on the whole face of the act. Indeed, the clear intention of the legislature, as apparent on inspection of the statute, will prevail, though in opposition to the strict letter." Section 201: "The object of interpretation being to ascertain the legislative intent, the doctrine follows as a necessary consequence that whenever this intention is clear on the face of an enactment, no room is left for the application of any particular rules."

While doubtless the more natural form of expression would be to connect these separate clauses by the conjunction "and" or "or," or else to place in the denunciation of the penalty some inclusive word directly referring to all the previous clauses, yet without that the intended connection is plain. The fact that all these clauses are embraced in a single section is of itself a connecting fact, and shows the obvious intent of congress that all the various offenses defined should be subjected to the same penalty. Further, these clauses are not disconnected by periods into separate sentences, but by the semicolon are linked together in a single sentence. In fact, the semicolon may fairly be treated as binding each clause of definition to the single general penalty.

The case of *U. S.* v. *Pelletreau*, (14 Blatchf. 127,) is very closely in point.    In it the court held as follows:

"But this construction of the section is entirely too strict, even for a criminal statute.    It is stated that, if the conjunction 'and' had been inserted between the semicolon and the word 'any,' the statute would be complete; but the omission of the conjunction by way of ellipsis in such statutes is a very common thing.    Sections 5463 and 5464, Rev. St., just above, present several instances of such omissions.    The intention of the statute is as plain without the conjunction as with it.    Manifestly, two classes of offenses were intended to be created,—one relating to the embezzlement of letters, etc., the other relating to stealing the contents of letters; and this intention is carried out if we suppose an ellipsis; while without an ellipsis a very considerable part of this section is useless and void.    According, then, to the familiar rules of construction, the statute should be read so as to render its language effective; and by inserting the conjunction this is done.    So read, it 'creates the offense charged in the indictment.' "

See, also, *U. S.* v. *Voorhees*, 9 FED. REP. 143.

These considerations and authorities lead me to the conclusion that the single penalty stated in the section is denounced against all the various offenses defined.

2. It is insisted that the purpose of congress in this section applies to one branch of the crime of larceny; that, therefore, the indictment should allege the ownership and value of the property stolen, and that it was feloniously stolen, taken, and carried away. I do not so understand the purport of the section.    It simply creates an offense against the postal service, and was intended to protect the sanctity of the mails; and it is entirely immaterial whether the letters taken contained anything of value whatever.    It may be remarked, in passing, that the indictment contained full description of the letters, so that the identification was complete.    *U. S.* v. *Mills*, 7 Pet. 140; *U. S.* v. *Stone*, 8 FED. REP. 232; *U. S.* v. *Lancaster*, 2 McLean, 436; *U. S.* v. *Laws*, 2 Low. 117; *U. S.* v. *Baugh*, 1 FED. REP. 784; *U. S.* v. *Marselis*, 2 Blatchf. 111.    This last case, also, very properly, as I think, disposes of the objection that the defendant, being in the postal service, could not be prosecuted under section 5469.

3. It is insisted that the offense charged against the defendant was a felony; that, therefore, he was entitled to 10 peremptory challenges.    It is abundantly established by the authorities that in determining the classification of offenses under the laws of the United States into felonies and misdemeanors the courts will not follow the rules of classification established by the various states, but will be guided alone by the federal statutes and the common law.    Now the offenses grouped together in this section are not declared therein to be felonies, nor are they offenses which existed at the common law. As heretofore stated, the section is not intended simply to define one form of larceny, but to protect the postal service and to preserve the sanctity of the mails; so, without regard to the amount of punishment which may be imposed, the general ruling has been to regard such

offenses as not felonies. See the case of *U. S.* v. *Wynn*, 9 FED. REP. 886, and the various authorities cited at the close of the opinion. It is unnecessary to review those authorities, or to enter into any extended discussion of the question, but it is sufficient to express simply a concurrence with the views expressed therein.

Finally, it is insisted that the court erred in the admission of 38 letters which are not mentioned in the indictment, and which the defendant was not charged therein with having taken and carried away. I think this testimony was competent. There was testimony tending to show that a straight package of letters from the west to Louisville passed through St. Louis,—a package which, by the well-understood rules and regulations of the post-office, was not to be disturbed at St. Louis, but forwarded in the condition it was received; that this package was opened by defendant, and out of it seven letters mentioned in the indictment taken. Now, these 38 letters were admitted as part of the straight package. It was competent to show that such a straight package was received, and to show what its contents were, and that is all what was done by the introduction of these 38 letters. Of course, such testimony tended strongly to show the intent of the defendant, for when the entire package should have been forwarded, his taking out seven letters and sending the others forward points strongly to an unlawful and criminal intent. It tends to show that here was no inadvertence or mistake on his part, and as such was admissible.

These are the material questions presented, and in them I see no error. Therefore the judgment will be affirmed and the same sentence imposed.