Charles H. EVERETT, Appellee,

v.

S.H. PARKS AND ASSOCIATES,
INC., Appellant.

No. 82–1097.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1982.

Decided Jan. 6, 1983.

Hiram W. Watkins, Clayton, Mo., for appellant.

Stefan J. Glynias, Lisa A. Kircher, Clayton, Mo., for appellee.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

S.H. Parks & Associates, Inc. (Parks) appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri upon a jury verdict in favor of Charles H. Everett. For reversal Parks argues the district court erred in (1) refusing proposed instruction c, (2) admitting certain rebuttal evidence, (3) excluding certain deposition testimony, and (4) denying Parks' motion for a new trial or in the alternative for remittitur. For the reasons discussed below, we vacate the judgment of the district court and remand the case for a new trial on the issue of damages only unless Everett agrees to a remittitur in the amount of $10,070.94.

Parks is engaged in the business of auditing accounts payable records for department stores. Accounts payable auditing involves examination of department store records for irregularities such as overpayments, valid discounts not taken, and freight bills not charged to the correct party. Such irregularities, called "charge-backs," are written up by the auditors on a "recap sheet" upon completion of the audit. The fee to Parks consists of half of the charge-backs actually recovered by the department store. Half of the fee paid by the department store is retained by Parks and the other half is distributed among the auditors involved on the audit that generated the fee. An individual auditor's share of a particular fee payment is computed according to the following formula, with adjustments for clerical fees and training bonuses: ($\frac{1}{2}$ fee received) X (percentage of days worked by the auditor on the audit) X (commission rate at which auditor is paid). Collection of fees from clients stretches out over long periods. Auditors may request advances from Parks.

Parks employs two classes of auditors: trainees and associates. Trainees are paid varying commission rates of less than fifty percent. Associates are paid commission rates from fifty to seventy-five percent. If an associate is working on an audit with a trainee, Parks pays the associate a training bonus or supervision fee. The method of computing the training bonuses was disputed. *See* note 8 *infra*.

Sometime in late 1977, Parks hired Everett as a trainee at a starting commission rate of one-third. Everett participated in thirteen audits and there is no dispute that he did a good job. What is disputed is the commission rate to be paid Everett for seven of the audits. In December of 1978, Everett completed an audit of the Hecht Co. with another auditor, Paul Sochaski. After the audit Everett and Sochaski called Roy Green, Parks' executive vice-president. Conflicting evidence was presented whether an agreement was reached during that conversation to promote Everett to associate and to increase Everett's commission rate to fifty percent. According to Everett, Sochaski was pleased with his work on the Hecht Co. audit and recommended that Green increase his commission rate to fifty percent. Immediately after that conversation, Everett went to the May Co. in Los Angeles to do his first audit on his own.

Everett contends that he was promoted to a fifty percent commission rate as a result of the telephone conversation with Roy Green, effective in December 1978 with the Hecht Co. audit. Parks contends that after the May Co.-L.A. audit was complet-

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

ed, Everett's commission rate was increased to forty percent and sometime late in 1979 Everett was considered for a promotion to associate status. No employment contract was ever signed. Parks contends that an employment contract must be signed before a trainee can become an associate. Everett contends that this requirement was not communicated to him and witnesses testified to never having signed a contract before being paid a commission rate of fifty percent. In a letter dated December 14, 1979, Everett refused to sign the employment contract and tendered his resignation, alleging that the terms of the employment contract differed from what he had been told in the telephone conversation with Roy Green.

In December of 1979, Roy Green prepared a summary of Everett's earnings as of November 30, 1979. That summary reflected a fifty percent commission rate for Everett beginning with the Hecht Co. audit. Parks' witnesses testified that the summary was merely an estimate of earnings, but the term "estimate" did not appear on the summary sheet.[2] The amounts of money earned by Everett on the thirteen audits and the method of calculation used by Everett differ from the amounts and the method of calculation used by Parks. These differences will be discussed below.

Everett filed this diversity action in federal district court to recover monies due him, alleging breach of an oral agreement. Following a three-day trial, the jury returned a verdict in favor of Everett in the amount of $30,000 plus interest and costs. Parks' post-trial motion for new trial or remittitur was later denied. This appeal followed.[3]

■ Parks first argues that the district court erred in refusing its proposed instruction c.[4] We have carefully examined the

record and find no timely objection raised by counsel. Fed.R.Civ.P. 51. This argument has not been preserved for appellate review. We find no plain error.

■ Parks next argues that the district court improperly admitted certain rebuttal evidence. During the case-in-chief Everett introduced evidence of an oral agreement specifying a commission rate of fifty percent. Parks then presented evidence that auditors had to sign a written contract before receiving the fifty percent commission rate. Thereafter the district court permitted Everett to introduce rebuttal evidence that Parks had paid other auditors a commission rate of fifty percent without written contracts. Parks argues that this evidence should have been introduced as part of Everett's case-in-chief and was not proper rebuttal evidence. We disagree. Everett's theory of the case was that he had an oral agreement. Evidence that other auditors had been paid commission rates of fifty percent without written contracts was not truly relevant until Parks presented its defense. *See Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 457–59 (2d Cir.1975), *citing* 6 Wigmore, Evidence § 1873, at 517 (3d ed. 1940) ("[F]or matters properly not evidential until the rebuttal, the proponent has a right to put them in at that time . . . . Matters of true rebuttal could not have been put in before . . . . ") (emphasis omitted). Even assuming that evidence that Parks had paid other auditors a fifty percent commission rate without written contracts would have been more appropriate as part of the case-in-chief, that fact "does not preclude the testimony if it is proper both in the case-in-chief and in the rebuttal." *United States v. Luschen*, 614 F.2d 1164, 1170 (8th Cir.), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980); *see, e.g., Smith v. Conley*, 584 F.2d 844, 846 (8th Cir.1978); *see also* Fed.R.Evid. 611.

2. The summary is Plaintiff's Ex. 18.

3. The jury also found in favor of Everett on Parks' counterclaim for tortious interference with contractual relations.

4. Your verdict must be for Defendant on Plaintiff's claim for additional monies due for

the period of Plaintiff's employment if you believe that Plaintiff knew that before he would become an Associated and receive 50 percent of the funds collected by Defendant on each audit Plaintiff would be required to sign an Employment Contract, but that Plaintiff refused to sign the same.

■ Parks next argues that the district court improperly excluded testimony from the deposition of Erica McCorvey. Parks sought to introduce this evidence to impeach Everett. Everett testified that he submitted an audit proposal to Lazarus, McCorvey's employer, at the request of the client and thus did not improperly interfere with Parks' contractual relationship with Lazarus. In her deposition McCorvey testified that she did not ask Everett to submit a proposal. Because Everett did not identify any Lazarus employee by name and McCorvey is one of several Lazarus accounts payable employees, McCorvey's denial was of little probative value. We find no error in the exclusion of this testimony.

■ Parks next argues that the district court abused its discretion in denying its motion for new trial or in the alternative for remittitur. Parks argues that the jury's award of $30,000 is not supported by the evidence and is excessive. We agree in part. An appellate court may itself order a new trial unless the plaintiff consents to a remittitur in a specific amount. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2820, at 133–34 (1973). Where the discrepancy between the award and the maximum amount reasonably supported by the evidence is apparent and the correction basically mechanical, and where the award is not the result of passion or prejudice,[5] the correction can be made at the appellate level. *See, e.g., Shingleton v. Armor Velvet Corp.,* 621 F.2d 180, 182 (5th Cir.1980); *Stapleton v. Kawasaki Heavy Industries, Ltd.,* 608 F.2d 571, 573–74 & n. 7 (5th Cir.1979). We vacate the judgment of the district court and remand the case for a new trial on the issue of damages only unless Everett agrees to a remittitur in the amount of $10,070.94.

■ We have carefully reviewed the evidence, assuming the jury intended to award Everett the maximum amount reasonably supported by his evidence. Everett sought damages in the amount of $19,929.06. This exact amount was specifically mentioned by Everett in his testimony and by Everett's attorney in closing arguments to the jury. According to Plaintiff's Exhibit 26, Everett calculated that he had earned a total of $73,195.20; in Defendant's Exhibit C, Parks calculated that Everett had earned a total of $48,682.46:

| Client | Earnings per Everett | Earnings per Parks |
| --- | --- | --- |
| Venture | $6,013.33 | $6,013.33 |
| Cook United | $7,417.83 | $8,370.95 |
| Walmart | $1,368.34 | $1,450.00 |
| May Co.-Cleveland | $4,617.99 | $5,135.73 |
| Lazarus 1977 | $2,830.54 | $3,227.70 |
| J. C. Penney | $1,615.17 | $1,615.17 |
| * Hecht Co. | $11,154.94 | $7,435.91 |
| * May Co.-L.A. | x$9,572.00 | $3,782.00 |
| * Rikes 1977 | $3,379.30 | +$2,703.44 |
| * Forest City | x$6,045.13 | +$2,281.60 |
| * Lazarus 1978 | x$6,466.09 | +$2,229.12 |
| * Rikes 1978 | x$5,474.09 | +$1,742.67 |
| * Gold Circle | x$7,240.45 | +$2,694.84 |
| | $73,195.20 | $48,682.46 |

The clients marked with an asterisk are those for which Everett argues that he was to be paid a commission rate of fifty percent. Everett's calculations of his earnings for these clients includes a commission rate of fifty percent. Parks argues that Everett was earning a commission rate of forty percent for his last five audits; the earnings attributable to those clients are marked with a +.

In addition, after the complaint was filed, Parks received five checks in partial payment for audits performed at least in part by Everett:

| | |
| --- | --- |
| Lazarus 1978 | $16,788.76 |
| May Co.-L.A. | $ 7,798.00 |
| Gold Circle | $13,476.31 |
| Forest City | $ 7,603.16 |
| Rikes 1978 | $10,000.00 |

Everett included these checks in his calculation of his earnings; the amounts are marked with an x. Parks argues that the checks received from Lazarus and May Co.-L.A. represent fees from subsequent "clean-up" audits done by other auditors. At trial Sam

---

5. Remittitur is not proper if the verdict is the result of passion or prejudice because passion or prejudice may affect the decision of the jury on the issue of liability as well as damages. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2815 (1973).

Parks, the president of Parks, testified that Everett's share of the other undistributed checks totalled $7,015.08,[6] when calculated at a commission rate of forty percent.

Everett argues that the jury award of $30,000 was well within the evidence presented. It was undisputed that Parks had advanced Everett $53,266.14.[7] Therefore, according to the evidence presented by Everett, Parks owed him $19,929.06, the difference between his total earnings of $73,195.20 and the $53,266.14 advance. Everett argues that any discrepancy between the claimed amount and the jury award could have been the result of the jury's consideration of Parks' records, which Everett described as incomplete and out-of-date, or the undistributed $30,000 check from May Co.-L.A. received by Parks after the complaint was filed, or the different methods of computing the training bonuses.[8] We are not convinced that the $10,070.94

discrepancy can be explained by the state of Parks' records. When he prepared his earnings claim, Everett included the five checks received by Parks after the complaint was filed. Even granting Everett some flexibility due to the clients' method of paying Parks overtime, it is difficult to determine what evidence supports the jury's awarding about 50% more than the amount claimed. Everett's share of the $30,000 check received from May Co.-L.A., if distributed to Everett at a commission rate of fifty percent, would amount to $15,000 or roughly $5,000 more than the discrepancy at issue. Moreover, it appears that this check was payment for the 1979 audit of the 1978 May Co.-L.A. accounts; Everett did not participate in the 1979 audit. *See* note 6 *supra.* The difference between the methods of computing the training bonuses does not adequately explain the discrepancy either. *See* note 8 *supra.* According to Everett,[9]

**6.** Sam Parks, the president of Parks, calculated that Everett's share, at a commission rate of forty percent, of the three undistributed checks was $2,747.71 for Gold Circle, $2,554.84 for Forest City, and $1,712.53 for Rikes 1978. Sam Parks also testified that Parks had received a check in the amount of $30,000 from May Co.-L.A. in early 1980. Although Everett on appeal argues that part of the jury award may be attributable to this undistributed check, Sam Parks testified that this check represented partial payment for the 1979 Parks audit of the 1978 May Co.-L.A. accounts. Everett worked on the 1978 audit of the 1977 accounts.

**7.** Although Plaintiff's Ex. 26 shows and Everett testified the total advanced was $53,266.14, Defendant's Ex. C shows that the total advanced was $53,266.16. We assume the jury intended to follow Everett's evidence.

**8.** Everett testified that he believed that the training bonus paid to an associate auditor for supervising and training trainee auditors is ten percent of the trainee's share and is paid out of the trainee's share, thus reducing the amount paid to the trainee. Sam Parks testified that the training bonus is the difference between the trainee's share and what the trainee would have been paid at a commission rate of fifty percent, is not paid out of the trainee's share, and thus does not reduce the trainee's share. For example, in Plaintiff's Ex. 25, Everett calculated his earnings from the 1978 audit of the 1977 Cook United accounts as follows, deducting the training bonus from his share: total cash received ($52,362.28) × % days worked

(.49) × commission rate (.333) = $8,543.95—Everett's share of clerical expenses ($554.53 × .49 = $271.72)—training bonus (10% of $8,543.95 = $854.40) = $7,417.83. According to Defendant's Ex. C, Parks calculated Everett's share as follows: [first cash payment received ($40,100)—total clerical expenses ($1,109.06) = $38,990.94 × .49 (% days worked) divided by 3 (Everett's commission rate of one-third) = $6,368.52] + [second cash payment ($10,850.29) × .1633 (.49 (% days worked) divided by 3) = $1,771.85] + [third cash payment ($1,411.99) × .1633 = $230.58] = $8,370.95. Parks calculated the training bonus as follows (using the net first payment received as an example): $9,552.78 (Everett's share if commission rate at fifty percent)−$6,368.52 (Everett's share at commission rate of one-third) = $3,184.26. Parks then divided this training bonus between two associate auditors who supervised Everett according to the percent of days each spent on the job.

**9.**

| Client | Earnings per Everett | Earnings Computing Training Bonus per Parks |
|---|---|---|
| Venture | $6,013.33 | 6,013.33 |
| Cook United | 7,417.83 | 8,272.23 |
| Walmart | 1,368.34 | 1,520.38 |
| May Co.-Cleveland | 4,617.99 | 5,131.10 |
| Lazarus-77 | 2,830.54 | 3,145.05 |
| J. C. Penney's | 1,615.17 | 1,615.17 |
| Hecht Co. | 11,154.94 | 11,154.94 |
| May Co.-L.A. | 9,572.00 | 9,572.00 |

the difference between the method he used to compute the training bonuses and the more generous one used by Parks is $6,447.03, or nearly 65% of the $10,070.94 discrepancy. However, the difference between the methods of computing the training bonuses does not result in consistently higher earnings for each audit, at least according to Everett's calculations, *see* note 9 *supra*. Only seven of the thirteen audits show an increase and of those seven audits, four were performed by Everett when he was a trainee and three when he was an associate. In addition, Everett included a fifty percent commission rate for the last seven audits in calculating his earnings. Moreover, even assuming the jury accepted Everett's method of calculating the training bonuses, this difference can account for only two-thirds of the discrepancy at issue.

Accordingly, if within fifteen days from the date on which the mandate is issued herein, Everett consents to a remittitur of $10,070.94, the judgment as remitted will stand affirmed. If Everett does not consent to a remittitur, the judgment will be vacated and remanded to the district court for a new trial on the issue of damages only. Each party is directed to bear its own costs on appeal.

| Client | Earnings per Everett | Earnings Computing Training Bonus per Parks |
|---|---|---|
| Rikes-77 | $3,379.30 | 3,379.30 |
| Forest City | 6,045.13 | 6,045.13 |
| Lazarus-78 | 6,466.09 | 8,008.97 |

| Client | Earnings per Everett | Earnings Computing Training Bonus per Parks |
|---|---|---|
| Rikes-78 | $ 5,474.09 | 6,795.88 |
| Gold Circle | 7,240.45 | 8,988.75 |
| | $73,195.20 | $79,642.23 |

Brief for Appellee at 8.