# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-1635

_____

Luther Stanley

*Plaintiff - Appellant*

v.

Cottrell, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 13, 2015
Filed: April 23, 2015

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

In the course of his work for Allied Systems, Inc., Luther Stanley fell from the upper deck of a flattop trailer manufactured by Cottrell, Inc. As a result of injuries to his back and left leg, Stanley could thereafter no longer work as a car hauler. He sued Cottrell for negligence, strict liability, breach of warranty, and outrage, alleging that the company could and should have installed additional fall protections on the trailer. The case was tried to a jury which found for Cottrell. Stanley moved for a

new trial, arguing that the district court[1] erred by refusing to allow the testimony of two rebuttal witnesses and by its instructions to the jury on his negligence and strict liability claims. Stanley also objected to the bill of costs submitted by Cottrell. The district court denied his motion for a new trial and awarded Cottrell $11,171.92 in costs, and Stanley appeals. We affirm the judgment and the award of costs.

I.

From 1978 to 2008 Stanley worked as a car hauler for Allied Systems, Inc., an auto transportation fleet. In addition to transporting cars, he was responsible for loading and unloading the cars from his trailer. On September 28, 2008 Stanley attempted to unload a car from the upper deck of a 55 foot, eight car trailer manufactured by Cottrell. He lifted himself onto the upper deck railing of the trailer, moved sideways across the railing, and placed his right hand on the trunk of the car. As he reached for the car door with his left hand, he lost his hold and fell, landing on his back and left leg. Although his back was not seriously injured from the fall, his leg has been operated on seven times since the fall, resulting in $642,797.38 in medical costs.

Stanley sued Cottrell in Missouri state court, raising claims for negligence, strict liability, breach of warranty, and outrage. He alleged that his trailer was defective and unsafe under Missouri law because it was not equipped with additional fall protections such as ladders, handholds, and extended catwalks. He also alleged that Cottrell could have and should have installed such safety equipment on his trailer. Cottrell removed the action to the United States District Court where the case proceeded to a jury trial during which there was contrasting expert testimony

---

[1] The Honorable Henry E. Autrey of the United States District Court for the Eastern District of Missouri.

regarding whether Cottrell could have designed and equipped the trailer with additional fall protections.

During Stanley's case in chief, Dr. Gerald Micklow testified that "study after study" had confirmed that flattop trailers posed significant safety hazards when they did not have ladders, handholds, and extended catwalks. He explained that federal regulations limited the frame or cargo bearing portion of flattop trailers to 102 inches in width, but an additional three inches was allowed on either side of the frame for non cargo bearing safety devices. Federal regulations thus limited the total width of flattop trailers to 108 inches. Relying on photographs of Stanley's trailer, Dr. Micklow testified that the trailer was only 102 inches wide rather than 108 inches and that Cottrell could have designed the trailer to include additional fall protections. At the close of Dr. Micklow's testimony, Cottrell moved for a directed verdict. The district court denied the motion.

Cottrell also presented the testimony of expert witness George Widas who agreed that federal law prohibited flattop trailers from exceeding 108 inches in width, including the frame of the trailer and all non cargo bearing safety devices. Based on his investigation of an exemplar trailer of the same make and model as Stanley's trailer, he concluded that Cottrell could not have equipped the trailer with additional fall protections because it already contained six inches of safety extensions on a 102 inch wide frame. On cross examination, Widas again explained that the total width of the trailer was 108 inches, the maximum allowable width under federal law.

Stanley's counsel attempted to call his client and Norman Miller, another Allied employee who was familiar with the trailer, to offer rebuttal testimony regarding the width of the trailer. Counsel stated that "it was completely unexpected [that] Widas would actually come in here and suggest to this jury that the [trailer] was 108 inches wide when everybody who knows anything about these [trailers] knows that's not possible given the configuration of the [trailer]." Cottrell replied that Stanley's

counsel had misunderstood the expert testimony offered by Widas whose views had been known well in advance of trial. The court refused to allow Stanley or Miller to give rebuttal testimony on the width of the trailer, concluding that such testimony was "arguably cumulative [given] all the other evidence that's come in from both sides."

Before the case was submitted to the jury, the district court and the parties discussed the content and order of the proposed jury instructions. Stanley intended to submit claims for strict liability and negligence with proposed verdict directors for each claim. The parties agreed that the verdict director for the strict liability claim would begin with the phrase "on Plaintiff's claim for personal injury based on product defect" and then list its elements. Similarly, the verdict director for the negligence claim would begin with the phrase "on Plaintiff's claim for negligence" and then list its elements. The parties also agreed that Cottrell could submit a "true converse instruction" for each verdict director as long as those instructions used "identical or substantially the same language" as their corresponding verdict directors.

After Cottrell edited the instructions, the district court read them out loud to the parties. In respect to Instruction 15, the strict liability instruction, the court stated, "in your verdict, you must assess a percentage of fault to Defendant Cottrell if you believe, first, Defendant Cottrell designed the car hauling trailer in the course of Defendant's business and the car hauling trailer design was then in a defective condition." Instead of stating the remaining elements of the strict liability claim, the court read the preamble of Instruction 16 which was the converse of the strict liability instruction: "On Plaintiff's Luther Stanley's claim for personal injury based on product defect." In respect to Instruction 17, the negligence instruction, the district court stated, "in your verdict, you must assess a percentage of fault to Defendant Cottrell if you believe, first, Defendant designed the car hauling trailer, and, second, the car hauling trailer did not have upper deck handholds or upper deck handrails." It then read the preamble of Instruction 18, the converse of its negligence instruction: "On Plaintiff Luther Stanley's claim for personal injury based on product defect." The

court asked whether there were any objections to the "form, content, or order" of the instructions, and Stanley responded, "I would just restate our objections to the instructions as we discussed earlier."[2]

In open court the district court read the instructions to the jury, including the verdict directors for the strict liability and negligence claims (Instructions 15 and 17, respectively) and the converse instructions for the strict liability and negligence claims (Instructions 16 and 18, respectively). Copies of the verdict directors and converse instructions were also given to the jury. The instructions read as follows:

Jury Instruction No. 15

In your verdict, you must assess a percentage of fault to defendant Cottrell, Inc. if you believe:

First, defendant Cottrell, Inc. designed the car hauling trailer in the course of defendant's business, and

Second, the car hauling trailer design was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Third, the car hauling trailer was used in a manner reasonably anticipated, and

Fourth, such defective condition as existed when the car hauling trailer was sold directly caused or directly contributed to cause damage to plaintiff Luther Stanley.

---

[2] The record does not indicate any prior objections, so we assume that counsel was referring to the purported agreement of the parties to use the same or substantially similar language in the converse instructions as in the verdict directors.

## Jury Instruction No. 16

On Plaintiff Luther Stanley's claim for personal injury based on product defect, you must not assess a percentage of fault against Defendant Cottrell unless you believe:

First, the car hauling trailer was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Second, the car hauling trailer was used in a manner reasonably anticipated, and

Third, such defective condition as existed when the car hauling trailer was manufactured directly caused or directly contributed to cause damage to plaintiff Luther Stanley.

## Jury Instruction No. 17

In your verdict, you must assess a percentage of fault to defendant Cottrell, Inc. if you believe:

First, defendant Cottrell, Inc. designed the car hauling trailer, and

Second, the car hauling trailer did not have upper deck hand holds or upper deck handrails or adequate walkways, and

Third, defendant Cottrell, Inc. failed to use ordinary care to design the car hauling trailer to be reasonably safe, and

Fourth, such failure in one or more respects submitted in paragraph Second directly caused or directly contributed to cause damage to plaintiff.

<u>Jury Instruction No. 18</u>

On Plaintiff Luther Stanley's claim for personal injury based on product defect, you must not assess a percentage of fault against Defendant Cottrell unless you believe:

First, Cottrell failed to use ordinary care to design the car hauling trailer to be reasonably safe, and

Second, such failure directly caused or directly contributed to cause Plaintiff's sustained damage.

Stanley did not object to the instructions when the court read them to the jury or when it provided them to the jurors. Instead, his closing argument detailed explanations of the instructions without any objection to their form, content, or order.

The jury returned a verdict finding that Cottrell and Stanley were both without fault and that Stanley had no damages. Judgment was entered in favor of Cottrell on February 19, 2013. Stanley moved for a new trial under Federal Rule of Civil Procedure 59, arguing that Widas had falsely testified about the width of the trailer and that Instruction 18 was improper. According to Stanley, Instruction 18 suggested that Cottrell could escape liability on the negligence and strict liability claims if it had exercised ordinary care when designing the trailer. He also contended that Cottrell was seeking costs for several nontaxable items, including expert witness fees, printed and electronic transcripts of the same depositions, copies of depositions, exemplification and copying costs for documents obtained in discovery, and witness fees for some who never testified.

The district court denied the motion for new trial after concluding that the expert testimony offered by Widas at trial was "consistent with his deposition testimony regarding the maximum width of the rig" and that Instruction 18 was not erroneous because it was "given immediately after [the] negligence claim based on

product defect and repeats the elements of the verdict director for [the] negligence claim based on product defect." In the same order the court awarded Cottrell $11,171.92 in costs, rejecting all of Stanley's objections to the bill of costs. Stanley now appeals the denial of his Rule 59 motion for a new trial and the award of costs to Cottrell.

## II.

## A.

Stanley first argues that the district court erred by refusing to allow him or Miller to rebut the testimony of Widas regarding the width of the trailer. We reverse a trial court's "determination of the admissibility of rebuttal testimony only where there has been a clear abuse of discretion." Life Plus Int'l v. Brown, 317 F.3d 799, 804 (8th Cir. 2003). Parties are "expected to present all of their evidence in their case in chief," and "[a]llowance of a party to present additional evidence on rebuttal depends upon the circumstances of the case." Gossett v. Weyerhaeuser Co., 856 F.2d 1154, 1156 (8th Cir. 1988) (internal citation omitted). The exclusion of cumulative rebuttal evidence neither prejudices a party nor amounts to an abuse of discretion. See Olson v. Ford Motor Co., 481 F.3d 619, 624 (8th Cir. 2007) (collecting cases).

Here, the proffered rebuttal testimony was cumulative. During Stanley's case in chief, Dr. Micklow testified that the trailer was "102 inches wide" and that Cottrell could have installed additional fall protections on it. Cf. Everett v. S.H. Parks & Assocs., Inc., 697 F.2d 250, 252 (8th Cir. 1983). When Stanley's counsel attempted to present rebuttal testimony by Norman Miller, the district court asked, "what information is he going to share with us?" Stanley's counsel replied, "he's going to testify regarding the width of the rig" in opposition to the competing testimony of Widas. He explained that "Miller and Stanley should be allowed to rebut that testimony." Because Miller and Stanley would have merely restated the testimony

of Dr. Micklow that the total width of the trailer was 102 inches rather than 108 inches, their proffered rebuttal testimony was cumulative. See Sterkel v. Fruehauf Corp., 975 F.2d 528, 532 n.3 (8th Cir. 1992); see also Skogen v. Dow Chemical Co., 375 F.2d 692, 706 (8th Cir. 1967).

Stanley contends that the proffered rebuttal testimony was not cumulative because Dr. Micklow based his testimony on photographs of the trailer while he and Miller would have testified based on their physical familiarity with the trailer. This fact does not change our conclusion. See Harris v. Steelweld Equip. Co., 869 F.2d 396, 399–400 (8th Cir. 1989). Although Dr. Micklow never measured the trailer, neither did Stanley or Miller. The proffered rebuttal testimony of the two lay witnesses was thus no more persuasive than the expert testimony of Dr. Micklow which involved the same subject. Cf. United States v. Campbell, 764 F.3d 880, 891 (8th Cir. 2014). The rebuttal testimony would thus have been cumulative. See Brawner v. Allstate Indem. Co., 591 F.3d 984, 989 (8th Cir. 2010).

Stanley also argues that he should have been allowed to rebut the testimony of Widas regarding the width of the trailer because it had "surprised" him. Even if the measurements that Widas testified about at trial differed from those he gave at his deposition, Stanley ignores the fact that we have allowed rebuttal of surprise testimony only in unique circumstances. A party may rebut surprise testimony if it is the "only evidence" presented at trial on a critical issue of fact. See Mawby v. United States, 999 F.2d 1252, 1254–55 (8th Cir. 1993); see also Adams v. Fuqua Indus., Inc., 820 F.2d 271, 273–76 (8th Cir. 1987). That is not the situation here. Stanley admits that the jury heard "dueling testimony regarding whether Cottrell could have and should have provided additional fall protections" on the trailer, and he further admits that Dr. Micklow informed the jury that the trailer was only "102 inches wide." Since that testimony would have addressed any surprise testimony that the trailer was 108 inches wide, the evidence on the subject was fairly and adequately presented to the trier of fact before Cottrell's case in chief. Cf. Everett, 697 F.2d at

252. Excluding the proffered rebuttal testimony thus did not prejudice the "jury's ability to reach a just decision," Adams, 802 F.2d at 276, or impact the "fundamental fairness" of trial, Mawby, 999 F.2d at 1254. The district court did not abuse its discretion in excluding the proffered rebuttal testimony. See, e.g., Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998).

B.

Stanley next asserts that the district court erred in its Instruction 18 because it was not a true converse of the verdict directors agreed to at the instruction conference. He objects that Instruction 18 began with the phrase "on Plaintiff's claim for product defect" instead of the more specific phrase "on Plaintiff's claim for negligence." Due to this alleged error, he claims that Instruction 16, the converse of the strict liability instruction, began with the same phrase as Instruction 18, the converse of the negligence instruction. He objects that this would have caused the jury to believe that he could not prevail on his strict liability claim without proving that Cottrell failed to use "ordinary care," an element relevant to only the negligence claim.

To preserve alleged errors in jury instructions, "a party must make a specific objection that distinctly states the matter objected to and the grounds for the objection." Bauer v. Curators of the Univ. of Mo., 680 F.3d 1043, 1044–45 (8th Cir. 2012). A general objection, "even when it encompasses a specific objection, is insufficient." Id. at 1045. If an objection has been preserved, we review the district court's instructions for an abuse of discretion. Id. at 1044. That review is limited to whether the instructions taken as a whole "fairly and adequately presented the evidence and applicable law to the jury." Friedman & Friedman, Ltd. v. McCandless, 606 F.3d 494, 499 (8th Cir. 2010). Even if a district court has improperly instructed a jury, we reverse only where the error affected the substantial rights of the parties. Bauer, 680 F.3d at 1044. If the point has not been preserved, we review the district

-10-

court's instructions for plain error. See id. at 1045; see also Fed. R. Civ. P. 51(d)(2). Plain error is a "stringently limited standard of review, especially in the civil context, and must result in a miscarriage of justice in order to compel reversal." Schaub v. VonWald, 638 F.3d 905, 925 (8th Cir. 2011).

Stanley did not preserve his objections to Instruction 18. At the instruction conference, the district court read aloud the introductory sentence of Instruction 18 which Stanley now claims was reversible error. Although Stanley heard the court recite "on Plaintiff's claim for product defect" rather than the more specific phrase "on Plaintiff's claim for negligence," he did not make an objection distinctly stating the matter objected to and the grounds for it. See Bauer, 680 F.3d at 1044–45. He instead replied, "I would just restate our objections to the instructions as we discussed earlier." Cf. Hopkins v. Chip-In-Saw, Inc., 630 F.2d 616, 621–22 (8th Cir. 1980). The general nature of this objection did not allow the district court to address any alleged problems with Instruction 18, even if it encompassed a prior agreement of the parties to use the same or substantially similar language in the converse instructions as in the verdict directors. See Lopez v. Tyson Foods, Inc., 690 F.3d 869, 876–77 (8th Cir. 2012). Nor did Stanley object to Instruction 18 after it was read to the jury but before it retired to deliberate. See Fed. R. Civ. P. 51(b)(2); see also Ross v. Garner Printing Co., 285 F.3d 1106, 1111 (8th Cir. 2012). He thus did not preserve his objections for appeal. See Lopez, 690 F.3d at 877; cf. Harrell v. Madison Cnty. Miss. Mote Co., Inc., 370 F.3d 760, 761 n.2 (8th Cir. 2004).

Because any claim of error was forfeited, Stanley must show that an "obvious error" in the jury instructions affected his substantial rights and that the error "seriously affected the integrity, fairness, or public reputation of judicial proceedings." Young v. Allstate Ins. Co., 759 F.3d 836, 841 (8th Cir. 2014). Missouri law allows a defendant to submit true converse instructions to a plaintiff's verdict directing instructions. Hiers v. Lemley, 834 S.W.2d 729, 734 (Mo. 1992). Each converse instruction must use "substantially the same language used in the

-11-

verdict directing instruction." Id. Stanley contends that Instruction 18 was not a true converse of Instruction 17 because it used the phrase "product defect" while Instruction 17 did not. Other than this addition to the preamble of Instruction 18, it did not inject any new or foreign element requiring the jury to evaluate the negligence claim based on a false issue. See Austin v. Western Auto Supply Co., 421 S.W.2d 203, 205 (Mo. 1967); cf. Frogge v. Nyquist Plumbing & Ditching Co., 453 S.W.2d 913, 917–18 (Mo. 1970). Instruction 18 accurately conversed all elements of the negligence instruction with substantially the same language used in the latter. See Lietz v. Snyder Mfg. Co., 475 S.W.2d 105, 109–11 (Mo. 1972); see also Einhaus v. O. Ames Co., 617 S.W.2d 519, 524 (Mo. Ct. App. 1981). Instruction 18 thus fairly and adequately presented the law to the jury.

Stanley further asserts that Instruction 18 caused the jury to believe that he could not prevail on his strict liability claim without proving that Cottrell failed to use ordinary care, an element relevant to only his negligence claim. See Nesselrode v. Executive Beechcraft, Inc., 707 S.W.2d 371, 383 (Mo. 1986). We disagree. Viewed as a whole, the jury likely understood that the case involved two distinct claims requiring proof of different legal elements. See Young, 759 F.3d at 841–42. Although Instructions 16 and 18 both used the term "product defect" to describe the strict liability and negligence claims, such "hypertechnical" challenges to the inclusion or arrangement of particular words in the instructions posed no concern to a "jury of ordinary intelligent laymen." Einhaus, 617 S.W.2d at 524. To prove a negligent design claim under Missouri law, a plaintiff must show that the defendant breached its duty of care in the design of a product and that this breach caused the injury. See Stevens v. Durbin-Durco, Inc., 377 S.W.2d 343, 347 (Mo. 1964); see also Blevins v. Cushman Motors, 551 S.W.2d 602, 607–08 (Mo. 1977). The generic term "product defect" is thus often used by federal and state courts to describe both types of product liability claims. See Redd v. DePuy Orthopaedics, Inc., No. 4:13-CV-2228 CDP, 2014 U.S. Dist. LEXIS 124858, at *3 (E.D. Mo. Sept. 8, 2014); see also Johnson v. Hyster Co., 777 S.W.2d 281, 284 (Mo. Ct. App. 1989).

Furthermore, Instructions 16 and 18 immediately followed their corresponding verdict directors, thus avoiding any confusion as to whether an ordinary care standard applied to the strict liability claim rather than the negligence claim. See Lopez, 690 F.3d at 880; see also Bauer, 680 F.3d at 1046. Instructions 15 and 16 also used substantially the same language in accurately outlining the elements of the strict liability claim, as did Instructions 17 and 18 in setting forth the elements of the negligence claim. As a result the strict liability instructions never mentioned the element of "ordinary care," allowing the jury to find for Stanley on his strict liability claim regardless of whether Cottrell had acted with ordinary care in designing the trailer. The form, content, and order of the instructions thus fairly and adequately informed the jury that there were two distinct claims and the ordinary care standard applied to the negligence claim alone. See Crump v. Versa Prods., 400 F.3d 1104, 1108–09 (8th Cir. 2005); see also McCandless, 606 F.3d at 499. The district court committed no error, plain or otherwise, in submitting Instruction 18 to the jury.

C.

Stanley finally argues that the district court erred by awarding nontaxable costs to Cottrell. We review de novo the legal issues related to the award of costs and review the actual award for an abuse of discretion. Sturgill v. United Parcel Serv., 512 F.3d 1024, 1036 (8th Cir. 2008). Rule 54(d) of the Federal Rules of Civil Procedure allows district courts to tax costs in favor of a prevailing party, and Title 28 U.S.C. § 1920 defines the expenses that may be taxed as costs pursuant to that rule. See Little Rock Cardiology Clinic PA v. Baptist Health, 591 F.3d 591, 601 (8th Cir. 2009). Under § 1920, a judge or court clerk "may tax as costs" fees of the clerk and marshal, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of necessary papers, docket fees, and compensation of court appointed experts and interpreters. 28 U.S.C. § 1920(1)–(6). As the losing party, Stanley bears

the burden of overcoming the presumption that Cottrell is entitled to recover all costs allowed by § 1920. See, e.g., Janis v. Biescheuvel, 428 F.3d 795, 801 (8th Cir. 2005).

The district court awarded Cottrell $975 for costs related to the deposition of expert witness Dr. Micklow. Stanley claims the district court abused its discretion in granting this award because Dr. Micklow was not a "court appointed" expert as required by 28 U.S.C. § 1920(6). Since Dr. Micklow was not appointed by the district court, we agree that § 1920(6) does not authorize the award of costs related to his deposition. See Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985). Nonetheless, Federal Rule of Civil Procedure 26(b)(4)(A) provides that a "party may depose any person who has been identified as an expert whose opinions may be presented at trial," and Rule 26(b)(4)(E) instructs that the district court "must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery." Read together, these rules allow for the recovery of witness fees related to the deposition of Dr. Micklow. Firefighters' Inst. for Racial Equality ex rel. Anderson v. City of St. Louis, 220 F.3d 898, 905 (8th Cir. 2002).

To the extent Stanley argues that the amount of the fee exceeds the limits established by Title 28 U.S.C. § 1821, the flexible authorization for a "reasonable fee" contained in Rule 26 supersedes the fee schedule outlined in § 1821(b). See Halasa v. ITT Educ. Servs., 690 F.3d 844, 850–52 (7th Cir. 2012); Haarhuis v. Kunnan Enters., Ltd., 177 F.3d 1007, 1015–16 (D.C. Cir. 1999). By beginning with the phrase "[e]xcept as otherwise provided by law," § 1821 recognizes that other laws may override its limitations. 28 U.S.C. § 1821(a)(1). Rule 26 was enacted after § 1821, and it permits trial courts to award "reasonable" fees for time spent responding to discovery. Halasa, 690 F.3d at 852. The rule is also distinguishable from other statutes which do not fall within the "otherwise provided by law" exception to § 1821. See Pinkham v. Camex, Inc., 84 F.3d 292, 295 (8th Cir. 1996). Unlike those statutes, Rule 26 refers "explicitly to witness fees," see Crawford Fitting Co. v. J.T. Gibbons, 482 U.S. 437, 441 (1987), exhibiting clear congressional intent

-14-

to surpass the limitations of § 1821(b), cf. Pinkham, 84 F.3d at 295; Neosho R V Sch. Dist. v. Clark, 315 F.3d 1022, 1031–33 (8th Cir. 2003). The district court thus did not err in awarding $975.00 in expert witness fees. See Firefighters, 220 F.3d at 905.

The court also awarded costs for printed and electronically recorded transcripts of the same deposition. Stanley contends that § 1920(2) enabled Cottrell to recover "fees for printed or electronically recorded transcripts," but not for both. 28 U.S.C. § 1920(2) (emphasis added). In Craftsmen Limousine, Inc. v. Ford Motor Co., we cited three circuit court decisions permitting recovery of costs for both printed and electronically recorded transcripts. 579 F.3d 894, 897 (8th Cir. 2009) (citing Little v. Mitsubishi Motors N. Am., Inc., 514 F.3d 699, 701–02 (7th Cir. 2008); Tilton v. Capital Cities/ABC, Inc., 115 F.3d 1471, 1478 (10th Cir. 1997); Morrison v. Reichhold Chems., Inc., 97 F.3d 460, 464 (11th Cir. 1996)). We continue to find good reason to allow recovery of costs for both printed and electronically recorded transcripts of the same deposition as long as each transcript was "necessarily obtained for use in [the] case." Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006); accord Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 363 (8th Cir. 1997).

On October 13, 2008 Congress amended § 1920(2) to allow "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." See Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, 122 Stat. 4291, 4299; accord 28 U.S.C. § 1920(2) (2015). The previous version of the statute, and the one which we reviewed in Craftsmen Limousine, Inc., allowed "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 579 F.3d at 896 (citing 28 U.S.C. § 1920(2) (2006)). Most circuits have not addressed whether the 2008 amendment altered the meaning of the statute, and district courts are split on the issue. A few courts have cogently analyzed the issue and documented the split of authority. See Dietgoal Innovations LLC v. Chipotle Mexican Grill, Inc., No. 2:12-cv-00764-WCB-RSP, 2015 U.S. Dist. LEXIS 3629, at *8–10 (E.D. Tex. Jan. 13, 2015) (collecting cases);

-15-

Higgins v. Potter, No. 08-2646-JWL, 2011 U.S. Dist. LEXIS 93811, at *7–10 (D. Kan. Aug. 22, 2011); Sportsman v. BNSF Railway Co., No. 4:10-cv-513 TIA, 2011 U.S. Dist. LEXIS 111400, at *5–6 (E.D. Mo. Sept. 29, 2011). The parties here have not addressed the issue in any detail.

As with any question of statutory interpretation, we turn first to the plain language of the statute. Hardt v. Reliance Std. Life Ins. Co., 560 U.S. 242, 251 (2010). In ascertaining the plain meaning of a statute, we "presume that a legislature says in a statute what it means and means in a statute what it says." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992). If the words are unambiguous, our inquiry is complete. Id. at 254. But when a statutory provision is susceptible to more than one interpretation, we examine other authorities to determine legislative intent. Owner-Operator Indep. Drivers Ass'n v. Supervalu, Inc., 651 F.3d 857, 863 (8th Cir. 2011).

The critical question here is the meaning of the word "or" as used in § 1920(2). In the criminal context, we have considered the rule of lenity and concluded that the ordinary usage of the word "or" is disjunctive, indicating an alternative. See United States v. Smith, 35 F.3d 344, 346–47 (8th Cir. 1994). We have also stated, however, that the plain meaning of a statute depends on its context. See King v. Ahrens, 16 F.3d 265, 271 (8th Cir. 1994). To "ascertain the clear intention of the legislature . . . courts are often compelled to construe the word 'or' as meaning 'and,' and again 'and' as meaning 'or.'" United States v. Gomez-Hernandez, 300 F.3d 974, 978 (8th Cir. 2002); accord United States v. Falkenhainer, 21 F. 624, 626 (C.C.D. Mo. 1884). The Eleventh Circuit has provided useful examples of the use of the term "or" in the conjunctive and disjunctive sense. See Shaw v. Nat'l Union Fire Ins. Co., 605 F.3d 1250, 1254 n.8 (11th Cir. 2010). The phrase, "if you are a husband or a father, you'll understand," demonstrates the use of "or" in the conjunctive sense because it intends to include persons who are both husbands and fathers. Id. By contrast, the phrase, "you may eat an apple or an orange," indicates the use of "or" in the disjunctive sense because it is not implied that one of the choices being offered is to eat both an apple

-16-

and an orange.  Id.  For similar reasons, we have not adopted a pedantic interpretation of the word "or" when context supports reading it in the conjunctive.  See Anderson v. Hess Corp., 649 F.3d 891, 897 (8th Cir. 2011); Smith v. United TV, Inc., 474 F.3d 1033, 1037 (8th Cir. 2007).

From the face of § 1920(2), it is unclear whether the term "or" is being used conjunctively or disjunctively.  The plain language of the statute contains no limiting words or phrases—such as "either," "but not both," or "limited to"—that might support an disjunctive reading of the term.  The context of the statute, however, supports a conjunctive reading, for in determining whether "statutory language is plain and unambiguous, we must read all parts of the statute together and give full effect to each part."  Owner-Operator, 651 F.3d at 863.  A conjunctive reading of the statute is consistent with the statutory demand that a written or electronic transcript of a deposition must be "necessarily obtained for use in the case."  28 U.S.C. § 1920(2).

Nothing in the statute suggests that both printed and electronically recorded transcripts of the same deposition cannot satisfy that requirement.  There are many circumstances where both printed and electronically recorded transcripts are "necessarily obtained for use in the case." 28 U.S.C. § 1920(2).  For example parties may capture depositions electronically in a large and complex patent case for use in trial while also retaining written transcripts for purposes of filing copies with the court.  See Eolas Techs. Inc. v. Adobe Sys., Inc., 891 F. Supp. 2d 803, 806 (E.D. Tex. 2012); Baisden v. I'm Ready Prods., 793 F. Supp. 2d 970, 976–77 (S.D. Tex. 2011).  Attorneys may also be called upon to edit objectionable portions of electronically recorded testimony, or to supply an opposing party with a transcript to obtain a video or audio recorded deposition.  Meredith v. Schreiner Transport, Inc., 814 F. Supp. 1004, 1006 (D. Kan. 1993).  In such circumstances both printed and electronic transcripts of the same deposition are "necessarily obtained for use in the case," thus satisfying the core requirement of the statute.  28 U.S.C. § 1920(2).

-17-

The legislative history of the statute supports this reading as well. As our sister circuits have suggested, the 2008 amendment to § 1920(2) was intended to expand rather than constrict the scope of recoverable costs under the statute. See Shlahtichman v. 1-800 Contacts, Inc., 615 F.3d 794, 801–02 (7th Cir. 2010); see also S&D Trading Academy, LLC v. AAFIS, Inc., 336 F. App'x 443, 450–51 (5th Cir. 2009). And nothing in the text or legislative history of the 2008 amendment indicates that Congress intended to overrule any of the decisions allowing for the taxation of both printed and electronically recorded transcripts. See, e.g., Little, 514 F.3d at 702. It appears that Congress reasonably intended to permit recovery of both written and electronically recorded transcripts of the same deposition. See In re Ricoh Co. Patent Litig., 661 F.3d 1361, 1370 (Fed. Cir. 2011).

Based on the language of the statute, the context in which it uses the word "or," and its broader context, we conclude that § 1920(2) permits taxation of costs for both printed and electronically recorded transcripts of the same deposition as long as each transcript is necessarily obtained for use in a case. See In re Ricoh, 661 F.3d at 1370; see also Little, 514 F.3d at 702; Tilton, 115 F.3d at 1478; Morrison, 97 F.3d at 465; BDT Prods., Inc. v. Lexmark Int'l, Inc., 405 F.3d 415, 420 (6th Cir. 2005). Stanley presents no argument that any written or electronically recorded transcript of the same deposition was unnecessarily obtained for use in this case. We conclude that the district court did not abuse its discretion by awarding such costs under § 1920(2). See Craftsmen Limousine, Inc., 579 F.3d at 898.

Stanley finally contends that the district court erred in taxing copying costs related to discovery and costs for certain witnesses who did not appear by deposition or at trial. Section 1920(4) permits recovery of "costs of making copies of any materials where the copies are necessarily obtained for use in the case," and our case law establishes that district courts "may tax costs for discovery-related copying." Little Rock Cardiology Clinic PA, 591 F.3d at 602 (internal citation omitted). Stanley has failed to show that Cottrell "obtained any of these copies for reasons

other than trial preparation." Slagenweit v. Slagenweit, 63 F.3d 719, 721 (8th Cir. 1995) (per curiam) (citing 28 U.S.C. § 1920(4)). The district court thus did not abuse its discretion in taxing the discovery related copying costs under § 1920(4).

Although Stanley correctly notes that the district court taxed witness fees for seven witnesses who did not appear at trial or by deposition, this does not automatically entitle him to relief. Of the seven witnesses, six were medical providers that had treated Stanley after he fell off the trailer. The providers were not prepared to testify at trial or by deposition, but they provided copies of medical records to Cottrell for a nominal fee. Upon the limited record before us, it appears that Cottrell paid such fees and used the records to examine Stanley's alleged injuries, a necessary cost of discovery under the statute. See 28 U.S.C. § 1920(4).

The $75 witness fee attributed to Brian Wendler, the only witness prepared to testify at trial but who did not, is recoverable as well. Fees may not ordinarily be taxed for someone who comes to the courthouse but does not testify. See Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 763 (8th Cir. 2006). Witness fees are allowed, however, when it appears that a court order or some extrinsic circumstance rendered the testimony unnecessary. See Spiritwood Grain Co. v. Northern P. R. Co., 179 F.2d 338, 344–35 (8th Cir. 1950). Such is the case here. Cottrell reasonably anticipated that it would call Wendler to rebut certain aspects of Dr. Micklow's testimony. Unexpectedly Dr. Micklow did not testify on those subjects, so it was no longer necessary for Wendler to testify. Because the strategic decision of opposing counsel rendered Wendler's testimony unnecessary, "it cannot be said that the court abused its discretion in affirming the taxation of costs" related to his attendance at trial. See Spiritwood Grain Co., 179 F.2d at 345; cf. Zotos, 121 F.3d 356 at 363. We therefore affirm the award of costs in all respects.

-19-

III.

For these reasons, we affirm the judgment of the district court as well as its award of costs.

_____